**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
BD DEVELOPMENT, LLC,

                           Plaintiff,

             - against -

LOCAL 79, LABORERS INTERNATIONAL
UNION OF NORTH AMERICA,

                           Defendant.
-----------------------------------------------------------X

**ORDER**

CV 14-4876 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**A.   PRELIMINARY STATEMENT**

Presently before the Court is the letter motion of Plaintiff BD Development, LLC ("Plaintiff") seeking to compel Defendant Local 79, Laborers International Union of North America ("Local 79" or "the Union") to produce all unredacted Market Development Department Weekly Reports ("Weekly Reports") from August 2010 to the present. DE 26 ("Pl.'s Mot.").[1] According to Local 79, the Weekly Reports are "internal reports which detail activities by various Local 79 staff members regarding various employers who are not signatory to a collective bargaining agreement with Local 79." DE 27 at 1 ("Def.'s Opp'n"). Plaintiff asserts that the information contained in the Weekly Reports is relevant to its claims that Local 79 engaged in unfair labor practices under section 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187 by conducting unlawful secondary boycott activity in violation of section 8(b)(4)(ii) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(b)(4). *See* Pl.'s Mot. at 2. Local

---

[1] Plaintiff states that its request encompasses a four-year time period. *See* Pl.'s Mot. At 1 n. 1. However, "August 2010 to present" covers more than four years, regardless of whether "the present" is considered the date of this Order or the date when Plaintiff filed the instant motion.

79 opposes the motion, arguing, *inter alia*, that Plaintiff has not established the relevance of the Weekly Reports which do not concern the alleged secondary boycotting at issue in this case, but instead reflect actions taken by the Union against other non-signatory employers over the last several years. *See* Def.'s Opp'n at 2-3. For the reasons explained below, Plaintiff's motion is GRANTED, in part, and DENIED, in part.

**B.  LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (noting that the scope of discovery under Rule 26(b) is "very broad"); *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004) ("Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept."). Notwithstanding these standards, "[t]he party seeking discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition." *Annunziato v. Collecto, Inc.*, 296 F.R.D. 112, 120 (E.D.N.Y. 2013); *see Surles v. Air France*, 210 F. Supp. 2d 501, 503 (S.D.N.Y. 2002). In addition, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008)).

C.  **DISCUSSION**

Plaintiff contends that the information in the Weekly Reports is relevant to its allegations that Local 79 engaged in unlawful secondary boycott activity against several businesses who had hired, or were considering hiring, Plaintiff to perform construction work. *See* Pl.'s Mot.; *see generally* Complaint ("Compl.") ¶¶ 8-70. Section 8(b)(4) of the NLRA, referred to as the secondary boycott provision, "prohibits a union from engaging in or inducing or encouraging strikes and picketing against an employer with whom it does not have a dispute, with an object of forcing that secondary employer to cease doing business with a primary employer." *N.L.R.B. v. Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 730 F.2d 870, 875-76 (2d Cir. 1984); *see Florida Sugar Mktg. & Terminal Ass'n, Inc. v. Local No. 3, Int'l Longshoremen's Ass'n, AFL-CIO*, 668 F. Supp. 173, 178 (S.D.N.Y. 1987) (citing, *e.g.*, *United Steelworkers of Am., AFL-CIO v. N.L.R.B.*, 376 U.S. 492 (1964)) (stating that section 8(b)(4) prohibits labor unions from engaging in "secondary boycotting" by "exert[ing] pressure on an employer not involved in the relevant labor dispute ('the secondary employer') in order to obtain a favorable result in the ongoing labor dispute with another employer ('the primary employer')"). Section 303 of LMRA "provides a private right of action to persons affected by unfair labor practices under section 8(b)(4) of the NLRA." *Bus. Asset Relocation, Inc. v. Teamsters Local 814*, No. 14-CV-0098, 2015 WL 1443267, at *3 (E.D.N.Y. Mar. 27, 2015); *see A. Terzi Prods., Inc. v. Theatricial Protective Union*, No. 97 CIV. 3615, 2000 WL 1234579, at *3 (S.D.N.Y. Aug. 31, 2000) (stating that section 303(b) of LMRA "provides that an aggrieved party may be awarded damages incurred by reason of a violation of the act – *i.e.*, by secondary boycott activity").

Plaintiff notes that courts consider "the totality of the circumstances" in determining whether a labor union's objective is to engage in a secondary boycott. Pl.'s Mot. at 2. According to Plaintiff, these circumstances include "the labor organization's behavior in contexts similar to, but independent of, the instant matter to see if the labor organization has a <u>history</u> or <u>pattern</u> of secondary boycott conduct." *Id.* (citing *Moll v. Telesector Rec. Group, Inc.*, 760 F.3d 198, 204 (2d Cir. 2014); *Florida Sugar*, 668 F. Supp. at 179) (emphasis in original). With this standard in mind, Plaintiff maintains that it "is entitled to union-wide discovery on Defendant's conduct involving their labor disputes with other contractors" – specifically, the unredacted Weekly Reports from August 2010 to present, which Plaintiff believes "will reveal Defendant's secondary boycott techniques and interactions with all contractors and third-parties." *Id.* This discovery, according to Plaintiff, will enable it to demonstrate at trial "the totality of the circumstances regarding Defendant's intent to engage in unlawful secondary boycott activity." *Id.*

The Court concludes that Plaintiff has not met its burden of making a *prima facie* showing that the unredacted Weekly Reports are relevant to its claims in this action. It is true, as Plaintiff states, that courts may consider the "totality of the circumstances" to determine "[a] union's true objective" in conducting a disputed labor practice and whether that labor practice "was in fact an illegal secondary boycott." *Eber Bros. Wine & Liquor Corp. v. Teamsters Local Union No. 118*, No. 02-CV-6229T, 2005 WL 290142, at *3 (W.D.N.Y. Feb. 7, 2005) (citing *N.L.R.B. v. Denver Building and Construction Trades Council*, 341 U.S. 675, 685-692 (1951)); *see A. Terzi Prods.*, 2000 WL 1234579, at *5; *Florida Sugar*, 668 F. Supp. at 179. Although Plaintiff asserts that a union's *past* labor practices must be considered as part of the "totality of

4

the circumstances," neither of the cases it cites provides legal support for this position. In *Florida Sugar*, the court considered the "totality of the circumstances" underlying two picketing demonstrations – one held in Baltimore and the other in Brooklyn – to determine whether the defendant union intended those demonstrations to force the secondary employer, AMSTAR, "to put pressure on Florida Sugar" in violation of NLRA § 8(b)(4). *See* 668 F. Supp. at 180-81. In holding that the union's objective in both picketing demonstrations was to engage in an unlawful secondary boycott, the court considered the circumstances specific to those demonstrations, such as: (1) the union's knowledge at the time of the Baltimore demonstration that AMSTAR had no ability to control whether Florida Sugar hired non-union workers; (2) the signs carried by the picketers, which failed to indicate that the object of the protests was Florida Sugar and not AMSTAR; (3) the union's negotiations with AMSTAR; and (4) the fact that the union contacted the leaders of a different union in Brooklyn, who have a "well-known preference to honor picket lines," to inform them of the picket and gauge their reactions. *Id.* at 180-81. The court in *Florida Sugar* did not consider actions the defendant union had taken in prior labor disputes (either with Florida Sugar or otherwise) or the union's history of secondary boycott activity, nor did it mention these considerations as factors to be evaluated as part of the "totality of the circumstances." *See id.* at 180 (listing factors which indicate "lawful common situs picketing" and "indicia of an improper motive" set forth by prior cases and which should be considered in the "totality of the circumstances" context). To the contrary, *Florida Sugar* indicates that only those circumstances surrounding *the labor activity at issue in the case* are relevant to the determination whether the union committed an unlawful secondary boycott. *See id.*; *see also Eber Bros.*, 2005 WL 290142, at *3-*5 (considering the "totality of the circumstances" of a

5

November 2001 work stoppage to determine whether the defendant union had an "improper motive for engaging in the sympathy strike ").

Plaintiff also relies on the Second Circuit's decision in *Moll v. Telesector Resources Group,* which is not an unfair labor practices case but, rather, an employment discrimination action alleging, *inter alia*, gender-based discrimination, sexually hostile work environment, and retaliation claims. 760 F.3d at 201-202. Plaintiff points to the Second Circuit's statement in *Moll* that documents "relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." *Id.* at 204 (vacating the district court's denial of the plaintiff's motion to compel the defendant employer to produce documents responsive to certain written requests and remanding for further proceedings) (quotation marks and citation omitted). Perhaps acknowledging that *Moll* is not on all fours with this case, Plaintiff states that "[l]ike in the discrimination context, to find a history or pattern of illegal secondary boycott activity, it is necessary to see how a union deals with all contractors with which it interacts in the totality of the circumstances. The need for such discovery is exactly the same here as in the discrimination context." Pl.'s Mot. at 2. The Court disagrees. In light of the analysis set forth in *Florida Sugar* and *Eber Brothers* – where the courts considered only the circumstances related to the union activity at issue in the case – this Court declines to extend the reasoning set forth in *Moll* to permit the discovery Plaintiff has requested here.

In sum, Plaintiff has not established that the information contained in unredacted Weekly Reports dating back to August 2010 would be relevant to the claims in this action. As Local 79

6

states in its opposition, neither *Florida Sugar* nor *Moll* "stand for the proposition that to determine [the union's] motive one should look to circumstances *unrelated* to the current dispute." Def.'s Opp'n at 3 (emphasis in original). Moreover, Plaintiff has not otherwise shown why it needs more than five years' worth of Weekly Reports, which, according to Local 79, contain internal, confidential information about Local 79's labor activity in other labor disputes with other non-union employers and developers. Such information has no bearing on how Local 79 acted, and what it meant to achieve, in its dispute with Plaintiff involving the alleged instances of secondary boycott at issue in this case. Thus, the Court will not compel Local 79 to produce all of its unredacted Weekly Reports dating back to August 2010.

That said, to the extent Plaintiff seeks information in the Weekly Reports which concern Local 79's alleged secondary boycott activity referenced in the Complaint, such information may be relevant to Plaintiff's claims and should be produced. Thus, the Court is directing Local 79 to produce, to the extent that it has not already done so, unredacted versions of any Weekly Reports, or any portions of Weekly Reports, which relate the Union's alleged secondary conduct against (1) Bank of America in April 2013, *see* Compl. ¶¶ 9-17; (2) Brookdale Hospital between April 2014 and May 2014, *see id.* ¶¶ 18-35; (3) Kings Plaza Mall and Gap Inc. between May 2014 and July 214, *see id.* ¶¶ 36-62; and (3) Gap vis-à-vis Banana Republic between March 2014 and April 2014, *see id.* ¶¶ 63-70. These materials are to be provided to the Plaintiff no later than January 29, 2016.

**D.** **CONCLUSION**

For the foregoing reasons, Plaintiff's motion is GRANTED, in part, and DENIED, in part, as set forth in this Order.

**SO ORDERED**.

Dated: Central Islip, New York
January 15, 2016

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge