UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                :

BD DEVELOPMENT LLC.,                 :
                                                :

                      Plaintiff,        :        Civil Action No.
                                                :        2:14-CIV-4876 (JS) (AKT)

       - v. –                               :
                                                :

LOCAL 79, LABORERS INTERNATIONAL   :
UNION OF NORTH AMEICA,        :
                                                :

                     Defendants.      :
                                                :

---------------------------------------------------------------- x


### DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF <u>UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1</u>


Joseph J. Vitale
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, New York 10036
(212) 356-0238

Tamir W. Rosenblum
Mason Tenders District Council
  of Greater New York
520 Eighth Avenue, Suite 650
New York, New York 10018
(212) 452-9407

Counsel for Defendant

00795898.1

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Eastern District of New York, Defendant Construction and General Building Laborers Local 79 ("Local 79" or the "Union") submits the following response to Plaintiff's Statement of Facts (the "Statement").

Although Local 79 disagrees with many of Plaintiff's contentions in the Statement, there is no genuine dispute as to any material fact in this case. All of the Union's disputes are with "facts" that are immaterial, legal arguments, or have no record support.

**BD Development LLC[1]**

    1.    Local 79 admits the contention in paragraph 1 of the Statement.[2]

    2.    Local 79 admits the contention in paragraph 2 of the Statement.

    3.    Local 79 denies the contentions in paragraph 3 of the Statement. Since February 1, 2014, BD has been party to two CBAs with Local 621 (not one) and Local 621 is no longer affiliated with the USWU or IUJAT. (Weigel Dep. Ex. 2, Local 621 Dep. Ex. 2; Talamo Dep. at 15).

    4.    Local 79 denies the contention in paragraph 4 of the Statement regarding the composition of the bargaining unit covered by the current or prior CBA between Local 621 and BD. The recognition clause does not cover apprentices. (Weigel Dep. Ex. 2; Local 621 Dep. Ex. 2).

---

[1] Local 79 incorporates plaintiff's headings for the Court's convenience only. Local 79 neither admits nor denies any assertions contained in the headings. Local 79 objects to several of plaintiff's headings, each of which will be noted throughout this Response.

[2] All admissions in the Union's Response are for the purposes of a Rule 56 motion only.

**Local 79, Laborers International Union of North America**

5.     Local 79 admits the contention in paragraph 5 of the Statement, but the record citation does not support the contention regarding Local 79's principal place of operation.

6.     Local 79 admits the contention in paragraph 6 of the Statement.

7.     Local 79 admits the contention in paragraph 7 of the Statement.

8.     Local 79 admits the contention in paragraph 8 of the Statement, except to note that Barry Smith was a business agent for Local 79 from November 2013 until May 2015. (Smith Dep. at 14).

9.     Local 79 admits the contention in paragraph 9 of the Statement.

10.     Local 79 denies the contention in paragraph 10 of the Statement as unsupported by the record cited by plaintiff (*e.g.*, Lee did not state he was arrested and did not allude to numerous arrests).  Local 79 further objects to the contention in paragraph 10 of the Statement as barred under Rules 404 and 609 of the Federal Rules of Evidence.

11.     Local 79 admits the contention in paragraph 11 of the Statement.

12.     Local 79 admits the contention in the first sentence of paragraph 12 of the Statement.  Local 79 denies the contention in the second sentence of paragraph 12 as barred under Rules 404 and 609 of the Federal Rules of Evidence.

13.     Local 79 admits the contention in paragraph 13 of the Statement.

14.     Local 79 denies the contention in paragraph 14 of the Statement, as it is not supported by the record cited by plaintiff.  Zecca did not testify to any exclusivity provision or policy that keeps other unions from joining the Building Trades; Flavoni testified only to his understanding that the Building Trades tries to keep outside unions from working within the

five boroughs.  Local 79 also objects to the contention as not material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

15.     Local 79 admits the contention in paragraph 15 of the Statement.

16.     Local 79 admits the contention in paragraph 16 of the Statement, but the record citation does not support the contention as to the principal place of operation of the Carpenters' Union.

17.     Local 79 admits the contention in paragraph 17 of the Statement, but the record citation does not support the contention as to Local 3's principal place of operation.

**BD Is Approved as a General Contractor for the Gap and Is Awarded Work**

18.     Local 79 admits the contention in paragraph 18 of the Statement.

19.     Local 79 admits the contention in paragraph 19 of the Statement.

20.     Local 79 admits the contention in paragraph 20 of the Statement.

21.     Local 79 admits the contention in paragraph 21 of the Statement that Lauren Kruse was the Director of Construction for the Northeast at the Gap at all relevant times. Local 79 also admits the contention that plaintiff was approved as a prequalified contractor for the Gap.  Local 79 denies that any of the details concerning the manner in which plaintiff secured the Old Navy job are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.  To the extent the conversations referenced in paragraph 21 regarding BD's relationship with Vujicic are offered to prove the truth of the matter asserted, Local 79 denies that the record cited by plaintiff supports that contention and objects to the record cited by plaintiff as inadmissible hearsay.

22.     Local 79 admits the contention in paragraph 22 of the Statement.

23.     Local 79 admits the contention in paragraph 23 of the Statement.

**The Mall**

24.  Local 79 admits the contention in paragraph 24 of the Statement.

25.  Local 79 admits the contention in paragraph 25 of the Statement.

26.  Local 79 admits the contention in paragraph 26 of the Statement.

27.  Local 79 admits the contention in paragraph 27 of the Statement.

28.  Local 79 admits the contention in paragraph 28 of the Statement.

29.  Local 79 admits the contention in paragraph 29 of the Statement, but plaintiff has provided an incomplete citation to support the assertion.  (Zito Dep. at 14:15-15:14).

30.  Local 79 admits the contention in paragraph 30 of the Statement that Zito had previously dealt with a Local 79 business agent named Carl Cully when issues arose on particular jobs.  Local 79 denies the contention that Cully "complained" to Zito on "numerous occasions" as unsupported by the record evidence, which refers to "communicate" and "from time to time."  (Zito Dep. at 15:5-9).  Local 79 also denies that the contentions in paragraph 30 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

31.  Local 79 admits the contention in paragraph 31 of the Statement.

32.  Local 79 denies the contention in paragraph 32 of the Statement because it is unsupported by the record.  Zito stated in his deposition that he "[r]arely" made first contact with Local 79.  (Zito Dep. at 16).

**Local 79 Descends Upon the Mall and the Gap[3]**

33.  Local 79 admits the contention in paragraph 33 of the Statement.

---

[3] Local 79 disputes the content of this heading, as the contention that Local 79 "Descends Upon the Mall" is argumentative.

34.     Local 79 admits the contention in paragraph 34 of the Statement that Labate spoke to Zito prior to the Old Navy job beginning.  Local 79 denies the contention that Labate told Zito that there "would be problems with the job if BD is performing the work," as it is not supported by the record cited.  (Zito Dep. at 25:12-26:14) (admitting he cannot recall the exact words used by Labate in the conversation and, to the extent that he can remember, testifying that Labate said that there "could or would be problems" with the job).  Local 79 also denies the contention that "Labate attempted to persuade Zito to exclude plaintiff from the job," as unsupported by the record.  (Zito Dep. at 26:15-19) (when asked if Labate "was trying to take some preemptive step for you not to allow BD to work on the job," Zito responded:  "I don't know that I would say that").  Finally, Local 79 denies that the contentions in paragraph 34 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

35.     Local 79 admits the contention in paragraph 35 of the Statement, but the contention that Ross was the project manager for plaintiff at the Old Navy job is not supported by the citation provided by plaintiff.  (Ross Dep. at 13-14; Giovinazzi Dep. at 70).

36.     Local 79 admits the contention in paragraph 36 of the Statement.

37.     Local 79 denies the contention in paragraph 37 of the Statement, as it is not supported by the record.  Ross testified that he recommended All City because "It came down to the union issue.  We wanted to have a union guy in there with Local 79."  (Ross Dep. at 45:9-46:3).  Local 79 also denies that the contentions in paragraph 37 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

38.     Local 79 admits the contention in paragraph 38 of the Statement, but the contention is not supported by the record cited by plaintiff.  (Rodopoulos Dep. at 60:21-24).

39.   Local 79 admits the contention in paragraph 39 of the Statement that Williamson visited the mall twice and that, on the first occasion, he spoke with a mall management representative, identified himself, and inquired as to whether plaintiff was performing work at the mall.  Local 79 denies that Williamson asserted that the labor harmony clause was being violated and that Williamson wanted the mall to resolve the violation, as that contention is not supported by the record.  (Williamson testified that he told the representative "I am here to remind you that there's a labor harmony clause that exists where you should have union contractors, and I would like you to resolve the situation."  (Williamson Dep. at 82)).  Local 79 denies that the facts alleged in paragraph 39 of the Statement are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

40.   Local 79 denies that the contentions in paragraph 40 of the Statement as unsupported by the record cited by plaintiff.  Williamson testified that in the second conversation he said someone should have gotten back to him regarding plaintiff, that "we have to establish the labor harmony clause" and that "We need to get the situation resolved."  (Williamson Dep. at 92).  Local 79 further denies that the contentions in paragraph 40 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

**In a Show of Force, Local 79 and the Building Trades Local Storm Zito's Office[4]**

41.   Local 79 admits the contention in paragraph 41 of the Statement that Zito sent Ross and Ciuzio an email on May 21, 2014.  To the extent the contents of the letter are

---

[4] Local 79 disputes the content of this heading, as the contentions that Local 79 and the Building Trades engaged in a "show of force" and "storm[ed]" Zito's office are argumentative and state a legal conclusion.

offered to prove the matters asserted, Local 79 denies the contention as unsupported by the record cited and as inadmissible hearsay.

42.     Local 79 admits the contention in paragraph 42 of the Statement that Macerich was very sensitive to a rat being blown up, but otherwise denies the contentions in paragraph 42 as unsupported by the record cited.  The citations provided by plaintiff refer to a separate conversation, not the conversation on May 21, and Local 79 disputes plaintiff's characterization of that conversation for the reasons set forth in paragraph 34, above.  Local 79 denies the contention that in the May 21 meeting, Labate threatened a rat or a picket line, as contradicted by other record evidence.  (Labate Dep. at 211-12, 255, 306) (stating that he "never threatened the mall" with picketing).  Local 79 also denies that Labate's statements are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

43.     Local 79 denies that the contention in paragraph 43 of the Statement that threats of picketing were made, as unsupported by the record cited by plaintiff.  As with paragraph 42, the citation is to testimony about an earlier conversation, not the May 21 meeting, and Local 79 disputes that conversation for the reasons set forth in paragraph 34.  Local 79 also denies that threats of picketing were made in the May 21 meeting, as contradicted by record testimony.  (Labate Dep. at 211-12) (denying that threats of picketing were made at the Building Trades grievance); (Labate Dep. at 255, 306) (stating that he "never threatened the mall" with picketing).  Local 79 also denies that the Labate's statements are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

44.     Local 79 denies the contentions in paragraph 44 of the Statement, as unsupported by the record cited by plaintiff.  As with paragraphs 42 and 43, the citations

provided by plaintiff reference an earlier meeting, the contents of which Local 79 disputes for

the reasons set forth in paragraph 34. Moreover, Local 79 denies that there was any mention of

shutting down the plant made at the May 21 meeting, as that contention is not supported by the

record. (Zito Dep. at 41-42) (testifying that he has no specific recollection about any of the

business agents indicating that shut down was possible during the meeting). Local 79 also

denies the contention that Labate spoke to Zito in a loud, threatening manner, as contradicted by

the record. (Labate Declaration at ¶ 2). Finally, Local 79 denies that the conduct at the May 21

meeting is material, as it is not relevant to whether BD suffered damages as a proximate result

of proscribed conduct.

45.     Local 79 admits the contention in paragraph 45 of the Statement regarding

the concerns of Macerich representatives. Local 79 denies, however, that the concerns were

limited to an electrical plan shutdown and a picket line, as Macerich was also concerned about

other union activity, including the inflation of a rat. (Zito Dep. at 30:6-16).

46.     Local 79 admits the contention in paragraph 46 of the Statement that Zito

was visited by several business agents from several Building Trades' local unions on May 21,

2014. Local 79 denies that the number of business agents in attendance was fifteen, as that

contention is contradicted by other record testimony. (Labate Dep. at 206:4-14, 215) (putting

the number in attendance on May 21 at no more than eight). Local 79 admits the contention

that the meeting was unscheduled, and that Zito testified that this was not customary, but Local

79 denies that an unscheduled meeting is unprecedented, as the testimony relied on by plaintiff

states only that business agents would "generally" call ahead. (Zito Dep. at 39:18-40:5). Local

79 admits that Zito testified that he had never been visited in a similar manner. Local 79 denies,

however, that any of the contentions in paragraph 46 of the Statement are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

47.     Local 79 admits the contention in paragraph 47 of the Statement that Zito claims he viewed the visit as an intimidation tactic.  Local 79 denies any contention that the unannounced visit was an intimidation tactic, as contradicted by other record evidence.  (Labate Dep. at 214-15) (denying that the purpose behind having the grievance at the mall was to intimidate the mall and denying that he thought the grievance would be intimidating).  To the extent that the alleged communications to Zito by other business agents is offered to prove the truth of the matters asserted therein, Local 79 denies that the record cited by plaintiff supports that contention and the Union objects to the record cited by plaintiff as inadmissible hearsay.  Local 79 also denies that Labate threatened to picket the mall in the May 21 meeting, as unsupported by the record cited and as contradicted by other record testimony.  (Zito Dep. at 40:19-24) (testifying "Honestly, I don't recall exactly" if any of the business agents made comments about a picket line being set up); (Zito Dep. at 40-41, 46) (testifying he does not specifically recall any reference to a picket line during the meeting); (Zito Dep. at 46) (testifying he does not remember any specific communication by the business agents during the meeting); (Labate Dep. at 211-12) (testifying that he did not threaten to picket the mall in the May 21 meeting); (Labate Dep. at 255, 306) (stating that he "never threatened the mall" with picketing).  Finally, Local 79 denies that the conduct at the May 21 meeting is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

48.     Local 79 admits the contention in paragraph 48 of the Statement that Zito was concerned about Local 3 potentially shutting down power to the mall, but denies that this concern was a result of Labate threatening to picket the mall as unsupported by the record.

(Labate made no such threat.  (Labate Dep. at 211-12, 255, 306)).  Local 79 also denies that

Zito's concerns were attributable to Local 79, as a Local 3 representative attended the meeting

and expressed concerns with plaintiff's electrical subcontractor.  (Zito Dep. at 66-67).  Local 79

further denies that there was any mention of shutting down the plant made at the May 21

meeting, as that contention is not supported by the record and contradicted by other record

evidence.  (Zito Dep. at 41-42) (testifying that he has no specific recollection about any of the

business agents indicating that shut down was possible during the meeting) (Labate Dep. at 217)

(denying a threat to shut down the power plan at the May 21 meeting).  Finally, Local 79 denies

that the conduct at the May 21 meeting is material, as it is not relevant to whether BD suffered

damages as a proximate result of proscribed conduct.

    49. Local 79 admits the contention in paragraph 49 of the Statement that Zito

had concerns about disappearance of materials, system problems, cut lines, and sabotage, but

denies the contention that these concerns were about Local 79's "threatened union activity," as

unsupported by the record cited.  In the testimony relied upon by plaintiff, Zito mentions these

concerns in the context of his meeting with all of the business representatives and does not

attribute these concerns to Local 79.  Finally, Local 79 denies that Zito's concerns are material,

as they are not relevant to whether BD suffered damages as a proximate result of proscribed

conduct.

    50. Local 79 admits the contention in paragraph 50 of the Statement that Zito

referred to the meeting as a "show of force" in his testimony, but denies the contention in

paragraph 50 that the meeting was an intimidation tactic, as contradicted by other record

evidence.  (Labate Dep. at 214-15) (denying that the May 21 meeting was an intimidation

tactic).  Local 79 also denies the contention that fifteen business agents showed up at Zito's

office, as that contention is contradicted by other record testimony.  (Labate Dep. at 215, 206:4-

14) (putting the number in attendance on May 21 at no more than eight).  Finally, Local 79

denies that Zito's testimony is material, as it is not relevant to whether BD suffered damages as

a proximate result of proscribed conduct.

    51. Local 79 denies the contentions made in paragraph 51 of the Statement as

unsupported by the record.  (Zito Dep. at 46-47) (showing that Zito's statement that plaintiff

would "have a hard time satisfying their requirements" was not made with specific reference to

Local 79 and admitting Zito "didn't get into the details" of what requirements he was referring

to).  Local 79 admits the contention that plaintiff's not using Local 79 laborers was one of

several issues raised at the meeting on May 21.  Local 79 denies the contention that there was a

threat of a picket line or a shutdown made at the May 21 meeting.  (Labate Dep. at 211-12, 255,

306; Zito Dep. at 41-42).  Finally, Local 79 denies that Zito's testimony is material, as it is not

relevant to whether BD suffered damages as a proximate result of proscribed conduct.

    52. Local 79 admits the contention in paragraph 52 of the Statement that

Giovinazzi, at Ross' request, had a conversation with Zito, but to the extent the conversations

referenced in paragraph 52 are offered to prove the truth of the matter asserted therein, Local 79

denies that the record cited by plaintiff supports that contention and objects to the record cited

by plaintiff as inadmissible hearsay.

    53. Local 79 denies the contention in paragraph 53 of the Statement, as it is

not supported by the record cited—Zito testified that the job was shut down due to numerous

issues raised by several business agents representing several different unions—and is

contradicted by other record evidence.  (Ciuzio Dep. at 33) (Macerich shut BD out of the job

site as a result of the threat made by Local 3); (Kruse Dep. at 13, 52-53) (Kruse understood the May lock out to be the result of an electrical union issue).

54.     Local 79 admits the contention in paragraph 54 of the Statement that the job was shut down on May 21, but denies the contention that Zito was visited by fifteen business agents for the reasons set forth in response to paragraph 46, above.

55.     Local 79 admits the contention in paragraph 55 of the Statement that Zito believed that there would be no risk of union activity at a job site that was not currently active, but denies the contention that Labate told Zito he wanted Zito to shut the job down, as that contention is contradicted by the record.  (Zito Dep. at 41-42) (testifying that he has no specific recollection about any of the business agents indicating that shut down was possible during the meeting); (Labate Declaration ¶ 3); (Labate Dep. at 211-18) (denying threatening a picket line, a rat, leafletting, or getting the Marketing Department involved at the May 21 meeting); (Zito Dep. at 26:15-19) (when asked if Labate wanted plaintiff off the job, Zito replied "I don't know if I would say that").

56.     Local 79 admits the contention in paragraph 56 of the Statement that BD's counsel sent a letter to Zito.  To the extent the contents of the letter are offered to prove the matters asserted, Local 79 denies the contention as unsupported by the record cited and as inadmissible hearsay.  Local 79 denies that Ross confirmed that the job was shut down as a result of union activity, as this contention is not supported by the record cited by plaintiff.  In the testimony relied upon by plaintiff, Ross cannot remember any specifics of the shut-down, including length or whether or not the shutdown even occurred.

**The Mall is a Stand-Alone Power Plant**

57.     Local 79 admits the contention in paragraph 57 of the Statement.

58.     Local 79 admits the contention in paragraph 58 of the Statement.

59.     Local 79 admits the contention in paragraph 59 of the Statement.

60.     Local 79 admits the contention in paragraph 60 of the Statement.

**Building Trades Grievance**

61.     Local 79 admits the contention in paragraph 61 of the Statement, except that the contention that the unions within the Building Trades have a meeting place in the back room of a restaurant is not supported by the record cited by plaintiff.

62.     Local 79 admits the contentions in paragraph 62 of the Statement but denies that the number of locals within the BCTC is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

63.     Local 79 admits the contention in paragraph 63 of the Statement that a member union of the Building Trades may issue a grievance against a particular contractor at a particular work site informing the other unions of an issue on the job, and that the grievance is communicated to the other unions within the Building Trades.  Local 79 denies the contention that a grievance functions as a call or summons to all the unions in the Building Trades as unsupported by the record cited and as contradicted by other record evidence.  (Labate Dep. 178-79, 191) (explaining that a grievance operates as an information gathering device to see if there are common problems on a job).

64.     Local 79 denies the contention in paragraph 64 of the Statement that Labate controls which Building Trades locals the grievance goes out to, as unsupported by the record cited.  (Labate Dep. at 185-86) (explaining that he can request that the grievance get circulated to "certain contractors, certain entities" depending on who he thinks "is going to have equity in the job," but that he does not know how the grievances are compiled and sent by the Building Trades).  Local 79 admits the other contentions in paragraph 64, except to add that the testimony relied upon by plaintiff contains a full explanation by Labate as to why he, and other

14

card-carrying union members, do not consider Local 621 to be a union, including their lack of covered jurisdiction, apprenticeship program, basic union records, or fixed job classifications. (Labate Dep. at 183).

65.    Local 79 denies the contention in paragraph 65 of the Statement as unsupported by the record cited and contradicted by other record evidence.  (Jordan Dep. at 9-10).

66.    Local 79 admits the contention in paragraph 66 of the Statement, except that the contention is not supported by the record cited by plaintiff.  (Smith Dep. at 103:17-104:20).

67.    Local 79 admits the contention in paragraph 67 of the Statement, except that the contention is not supported by the record cited by plaintiff.  (Jordan Dep. Ex. 2).

68.    Local 79 admits the contention in paragraph 68 of the Statement.

69.    Local 79 admits the contention in paragraph 69 of the Statement.

70.    Local 79 denies the contention in paragraph 70 of the Statement as not supported by the record cited by plaintiff.  (Smith Dep. at 108) (explaining that a Business Agent of a Union specifically requested to attend a grievance meeting (not all unions within the Building Trades) is expected to attend).

71.    Local 79 admits the contention in paragraph 71 of the Statement that one purpose of a grievance meeting is to show support for the Building Trades, and another purpose is to attempt to resolve an issue; Local 79 denies that there is just one purpose.  (Labate Dep. at 179-81) (explaining that another purpose is to inform other local unions of potential problems).

72.    Local 79 denies the contention in paragraph 72 of the Statement that a Building Trades grievance is usually filed when a contractor refuses to put a laborer on, as

unsupported by the record cited.  In the testimony relied upon by plaintiff, Smith does not speak to the frequency with which he files a grievance over any particular issue; moreover, Smith was not addressing grievances filed by other unions.

73.     Local 79 denies the contention in paragraph 73 of the Statement, as unsupported by the record cited by plaintiff.  In the testimony relied upon by plaintiff, Williamson said that in that situation the other trades on the job would "[m]aybe," "most likely" come out in solidarity.  (Williamson Dep. at 96).

74.     Local 79 denies the contention in paragraph 74 of the Statement, as unsupported by the record cited by plaintiff.  In the testimony relied upon by plaintiff, Williamson stated that solidarity could take different forms, such as not entering a building or passing out leaflets or making phone calls.  (Williamson Dep. at 96:24-97:23).

75.     Local 79 admits the contention in paragraph 75 of the Statement.

76.     Local 79 denies the contentions in paragraph 76 of the Statement, as not supported by the record cited and as contradicted by other record evidence.  In the hypothetical Smith was asked to consider how he would handle, he testified that the grievance is directed at the contractor, not the landlord, but that the landlord would be informed of the grievance "out of respect."  Smith also testified that informing the landlord would involve letting them know "what the situation would be."  (Smith Dep. at 274).  Local 79 denies the contention that a third party "has nothing to do with the Building Trades grievance" as that contention is contradicted by other record evidence showing that in cases where a landlord has a union harmony clause, the landlord is indirectly involved in disputes between a union and a contractor.  (Kruse Dep. at 56-58) (testifying to multiple conversations with Lindsey about the mall's insistence that Gap satisfy the union harmony clause); (Zito Dep. at 12-13, 96, 132) (testifying to the existence of

union harmony clause and Macerich's efforts to make sure the clause was satisfied); transcript of recording of call dated July 1, 2014 (Lindsey explaining that Macerich is involved in dispute between unions and plaintiff because of union harmony clause).

77.     Local 79 denies the contentions in paragraph 77 of the Statement, as not supported by the record cited and as contradicted by other record evidence.  In the hypothetical Smith was asked to consider, he testified that the grievance is directed at the contractor, that the union deals directly with the contractor, and the landlord would "have nothing to do" with the union dealing with the contractor.  (Smith Dep. at 276:9-16). Smith also testified that the union would "explain" the grievance to the landlord. Smith Dep. at 276:9-16).  Moreover, ample evidence in the record shows that in cases where a landlord has a union harmony clause the landlord is involved in disputes between a union and a contractor.  (Kruse Dep. at 56-58) (testifying to multiple conversations with Lindsey about the mall's insistence that Gap satisfy the union harmony clause); (Zito Dep. at 12-13, 96, 132) (testifying to existence of union harmony clause and Macerich's efforts to make sure the clause was satisfied); transcript of recording of call dated July 1, 2014 (Lindsey explaining that Macerich is involved in dispute between unions and plaintiff because of union harmony clause).

78.     Local 79 admits the contention in paragraph 78 of the Statement that Labate held a BCTC grievance at the mall management's office with other business agents and Zito, but without plaintiff present, but denies the contention that the meeting was "despite" anything.  Local 79 also denies that this contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

**Lack of Manpower[5]**

79.     Local 79 denies the contentions in paragraph 77 of the Statement as contradicted by the record evidence.  (Rynkiewycz Dep. at 91-92) (testifying that if the Local 79 Hiring Hall does not have a match for a contractor seeking a laborer, the contractor can employ any worker it wants through whatever means, and that there are not always individuals on Local 79's hiring hall list who are ready, willing and able to go to actual job); (Rodopoulos Dep. at 15-16) (testifying that All City "didn't need more men" for BD's job at the Mall); (Rodopoulos Dep. at 44, 49, 75) (testifying that All City made a single request for a single night and for one or two laborers); (Rodopoulos Dep. at 75-77) (testifying that the Hiring Hall's failure to provide the workers All City alleges it asked for did not cause any delay, and even if the Hiring Hall had satisfied All City's alleged request, All City was going to split the laborers between two jobs it had at the Mall).

80.     Local 79 admits the contention in paragraph 80 of the Statement that Ross had several conversations with representatives of All City in which he expressed the view that All City needed to supply more manpower.  To the extent the conversations referenced in paragraph 80 are offered to prove that All City needed to supply more manpower, Local 79 denies that contention as inadmissible hearsay, as unsupported by the record cited, and as contradicted by other record evidence.  (Rynkiewycz Dep. at 91-92) (testifying that if the Local 79 Hiring Hall does not have a match for a contractor seeking a laborer, the contractor can employ any worker it wants through whatever means, and that there are not always individuals on Local 79's hiring hall list who are ready, willing and able to go to actual job); (Rodopoulos Dep. at 15-16) (testifying that All City "didn't need more men" for BD's job at the Mall);

---

[5] Local 79 objects to the content of this heading, as it states a legal conclusion.

(Rodopoulos Dep. at 44, 49, 75) (testifying that All City made a single request for a single night and for one or two laborers); (Rodopoulos Dep. at 75-77) (testifying that the Hiring Hall's failure to provide the workers All City alleges it asked for did not cause any delay, and even if the Hiring Hall had satisfied All City's alleged request, All City was going to split the laborers between two jobs it had at the Mall).

81.      Local 79 admits the contention in paragraph 81 of the Statement that individuals from BD admonished All City for, in their view, falling behind schedule.  To the extent the admonishments referenced in paragraph 81 are offered to prove that All City fell behind schedule, Local 79 denies that contention as inadmissible hearsay, as unsupported by the record cited, and as contradicted by other record evidence.  (Rynkiewycz Dep. at 91-92) (testifying that if the Local 79 Hiring Hall does not have a match for a contractor seeking a laborer, the contractor can employ any worker it wants through whatever means, and that there are not always individuals on Local 79's hiring hall list who are ready, willing and able to go to actual job); (Rodopoulos Dep. at 15-16) (testifying that All City "didn't need more men" for BD's job at the Mall); (Rodopoulos Dep. at 44, 49, 75) (testifying that All City made a single request for a single night and for one or two laborers); (Rodopoulos Dep. at 75-77) (testifying that the Hiring Hall's failure to provide the workers All City alleges it asked for did not cause any delay, and even if the Hiring Hall had satisfied All City's alleged request, All City was going to split the laborers between two jobs it had at the Mall).

82.      Local 79 admits the contention in paragraph 82 of the Statement that Giovinazzi requested a letter from All City.  To the extent the request or the letter referenced in paragraph 82 are offered to prove that All City needed to supply more manpower, Local 79 denies that contention as inadmissible hearsay, as unsupported by the record cited, and as

contradicted by other record evidence.  (Rynkiewycz Dep. at 91-92) (testifying that if the Local 79 Hiring Hall does not have a match for a contractor seeking a laborer, the contractor can employ any worker it wants through whatever means, and that there are not always individuals on Local 79's hiring hall list who are ready, willing and able to go to actual job); (Rodopoulos Dep. at 15-16) (testifying that All City "didn't need more men" for BD's job at the Mall); (Rodopoulos Dep. at 44, 49, 75) (testifying that All City made a single request for a single night and for one or two laborers); (Rodopoulos Dep. at 75-77) (testifying that the Hiring Hall's failure to provide the workers All City alleges it asked for did not cause any delay, and even if the Hiring Hall had satisfied All City's alleged request, All City was going to split the laborers between two jobs it had at the Mall).

        83.    Local 79 denies the contention in paragraph 83 of the Statement, as it is not supported by the record cited.  In the testimony relied on by plaintiff, Smith testified that at the time he placed himself on the list, there were fewer than two hundred members.  (Smith Dep. at 33:24-34:2.).  Local 79 also denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

        84.    Local 79 denies the contentions in paragraph 84 of the Statement as unsupported by the record cited by plaintiff.  Smith testified to as to the number of workers on the list to the best of his knowledge, not an accurate number.  Local 79 also denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

**Hiring Hall**

        85.    Local 79 admits the contentions in paragraph 85 of the Statement that it has a Hiring Hall and approximately 9,300 members.  Local 79 denies the contentions that there are "currently" 400 members on the out-of-work list and that "members are chosen from the

hiring hall according to seniority" as those contentions are not supported in the record cited by plaintiff.  Based on the testimony relied upon by plaintiff, the number 400 was an estimation of the number of workers who were out of work as of the date of Lee's deposition, which was held in August, 2015.  (Lee Dep. at 68:10-11).  Lee also testified that members are chosen based on the order at which they put their names on the list.  (Lee Dep. at 68:2-7).  Further, Local 79 denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

86.     Local 79 denies the contentions in paragraph 86 of the Statement as unsupported by the record cited by plaintiff.  (Rynkiewycz Dep. at 88:10-11) (testifying that he has only "vague knowledge" of the Local 79 Hiring Hall).  Local 79 also denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

87.     Local 79 admits the contention in paragraph 87 of the Statement that Piecora testified that she generally did not have problems requesting laborers through the Hiring Hall, but that she did have problems a couple of times in 2014, particularly at night and on weekends.  Local 79 denies that these contentions are material, as they do not show that Local 79 engaged in unlawful activity that caused plaintiff harm.

88.     Local 79 admits the contention in paragraph 88 of the Statement that Piecora generally sent requests the day before and usually did not have issues getting workers.  Local 79 denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

89.     Local 79 admits the contention in paragraph 89 of the Statement that Labate made certain statements, but denies the plaintiff's characterization of those statements as

unsupported by the record cited and contradicted by other record evidence.  Labate said "you're never going to run out of guys" when describing one aspect of the sales pitch he uses to convince contractors to sign with Local 79.  The statement about Brooklyn not running out of laborers was said in contrast to Staten Island, where it is sometimes hard to find a laborer. Labate also said that "most" demo is done at night.  This testimony is also contradicted by other testimony in the record.  (Piecora Dep. at 19:11-18) (testifying that issues in finding laborers happened on "weekends or night work").  Local 79 also denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

90.     Local 79 denies the contentions in paragraph 90 of the Statement as contradicted by other record evidence.  (Rodopoulos Dep. at 24-27, 30-32); (Williamson Dep. Ex. 4) (showing All City made a request for laborers on May 28, 2014 and three laborers were dispatched by the Hiring Hall).  Finally, Local 79 denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

91.     Local 79 admits the contentions in the first and third sentences of paragraph 91 of the Statement, but denies the contention in the second sentence that the Hiring Hall told Rodopoulos that no laborers were available.  (Rodopoulos Dep. at 24-27, 30-32); (Williamson Dep. Ex. 4) (showing All City made a request for laborers on May 28, 2014 and three laborers were dispatched by the Hiring Hall).  Local 79 also denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

**Local 79's Campaign Against BD at the Old Navy Job Site Continues[6]**

92.     Local 79 denies the contention in paragraph 92 of the Statement that Local 79 issued a "threat directly to Zito" that they would set up a picket line.  The contention is unsupported by the record cited, and the Union objects to the record cited by plaintiff as inadmissible hearsay.  (Ross Dep. at 130-31) (testifying that he had a single conversation with Labate who never mentioned a picket line or a rat or any response Local 79 would take and that he was not present for any conversations in which Local 79 told a third-party what actions Local 79 would take); (Ross Dep Ex. 10 at 54) (email from Flavoni to Zito setting forth Flavoni's "understanding" that Local 79 threatened Zito).  The contention is also contradicted by other record evidence and is a legal conclusion, rather than a fact.  (Labate Dep. at 255, 306) (denying threatening the mall with a picket line).

93.     Local 79 admits the contention in the first sentence of paragraph 93 of the Statement that Flavoni sent Zito an email on July 1, 2014 but denies plaintiff's characterization of the contents of that email as unsupported by the record cited (Flavoni was not informing Zito about threats) and as contradicted by other record evidence.  (Labate Dep. at 255) (denying threatening the mall with a picket line).  To the extent that July 1 email is offered to prove the truth of the matter asserted therein, Local 79 objects to the email as inadmissible hearsay.  Local 79 admits the contentions in the second and third sentences of paragraph 93, except to the extent plaintiff contends the "pressure" Zito discussed was the threat of a picket line, since that contention is not supported by the record.  (Zito Dep. at 75-76 (admitting he did not "recall specifically" what Local 79 did after May 21)).

---

[6] Local 79 objects to this heading as it is argumentative and states a legal conclusion.

94.     Local 79 denies the contentions in paragraph 94 of the Statement as unsupported by the record cited by plaintiff.  (Zito Dep. Ex. 7) (Zito claiming he was contacted by the Carpenters Union, not Local 79); (Zito Dep. at 81-85) (testifying to being out of the country, does not testify to receiving threats from Local 79, does not testify to relaying communications to Lindsey).  Local 79 also denies the contentions as contradicted by record evidence, and states a legal conclusion, rather than a fact.  (Labate Dep. at 255, 306) (denying threat of a picket line at the mall)).  Moreover, to the extent that the emails contained in the exhibit cited by plaintiff are offered to prove the truth of the matter asserted, Local 79 objects to those contentions as inadmissible hearsay and denies the contentions as unsupported by the record.  Finally, Local 79 objects to these contentions as not material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

95.     Local 79 denies the contentions made in paragraph 95 of the Statement, as they are unsupported by the record cited and contradicted by record evidence.  Ross testified that he could not remember the number of conversations he had with Zito and that they "blend together a little bit."  (Ross Dep. at 132); (Labate Dep. at 255, 306) (denying threats to picket the mall).  Local 79 also denies all of the contentions in paragraph 95 as they are based on inadmissible hearsay.

96.     Local 79 admits the contention in paragraph 96 of the Statement that Smith spoke to Lindsey by phone in August 2014 but denies plaintiff's characterization of that conversation as unsupported by the record cited.  (Smith Dep. at 126:17-127:2) (not providing the content of the call, except to say that Smith "explained . . . what was going on in my situation, what I inherited, what was going on").  Finally, Local 79 denies that the contentions in

paragraph 96 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

    97. Local 79 admits the contentions in the first two sentences of paragraph 97 of the Statement.  Local 79 denies the contention in the third sentence that the subject of the conference call was Macerich's concern that Local 79 would picket the mall, as that contention is unsupported by the record.  (At the outset of the call, Lindsey states that the call is happening because the union harmony clause is not being maintained, particularly because the unions—not just Local 79—were stating that their calls were not returned.  Lindsey also discussed the concerns of the Carpenters Union, who was not having its calls returned).  Local 79 admits that Flavoni discussed actions that he characterized as attempts to achieve union harmony, but to the extent his comments are offered to prove the truth of the matter asserted, Local 79 denies that the record cited by plaintiff supports that contention and objects to the record cited by plaintiff as inadmissible hearsay.  Local 79 denies the contention in the sixth sentence that Macerich would shut down the job site in the event of any picketing as unsupported by the record cited and contradicted by record testimony.  In the recording relied upon by plaintiff, when asked what specifically Local 79 said they would do, Lindsey said they would "taking action in whatever form they choose to take it."  Lindsey also stated that inflating a rat would be sufficient to shut down the job.  Moreover, in discussing the potential union activity, Flavoni said "if they want to put up the rat, let them put up the rat."  (Zito Dep. at 41-42) (testifying that his statement that "we cannot have union issues here" includes rats being set up).  To the extent that they are offered to prove the truth of the matter asserted, Local 79 denies the contentions regarding the actions the tenant must take under the union harmony clause as unsupported by

the record and objects to the contentions as inadmissible hearsay.  Local 79 admits the

contentions in the final two sentences of the paragraph.

        98.    Local 79 denies the contentions in paragraph 98 of the Statement as

unsupported by the record cited by plaintiff.  To the extent the email is offered for the truth of

the matter asserted therein, Local 79 objects to the email as inadmissible hearsay.  The record

also does not support the contention regarding Ciuzio's understanding of the email.  (Ciuzio

Dep. at 83) (admitting that any interpretation of the term "problem" would "only be

conjecture").

        99.    Local 79 denies the contentions in paragraph 99 of the Statement as

unsupported by the record; and, to the extent the telephone conversation is offered for the truth

of the matter asserted therein, Local 79 objects to the call as inadmissible hearsay.  Local 79

denies the contention that Local 79 acted in bad faith, as unsupported by the record, as

contradicted by record testimony and as argumentative.  (Labate Dep. at 88-89, 228) (testifying

that BD agreed to use a laborer represented by Local 79 "two, three days a week" until the work

on the job increased at which time plaintiff would use the laborer more than once a week).  Local

79 also denies the reference to acts of sabotage, as Flavoni was referring to All City not being

able to obtain laborers from the Hiring Hall on one day, and the record evidence contradicts the

assertion that this was an act of sabotage by Local 79.  (Rynkiewycz Dep. at 91-92) (testifying

that if the Local 79 Hiring Hall does not have a match for a contractor seeking a laborer, the

contractor can employ any worker it wants through whatever means, and that there are not

always individuals on Local 79's Hiring Hall list who are ready, willing and able to go to actual

job); (Rodopoulos Dep. at 15-16) (testifying that All City "didn't need more men" for BD's job

at the Mall); (Rodopoulos Dep. at 44, 49, 75) (testifying that All City made a single request for a

single night and for one or two laborers); (Rodopoulos Dep. at 75-77) (testifying that the Hiring Hall's failure to provide the workers All City alleges it asked for did not cause any delay, and even if the Hiring Hall had satisfied All City's alleged request, All City was going to split the laborers between two jobs it had at the Mall).

100.   Local 79 admits the contention in paragraph 100 of the Statement that the Gap was indifferent as to the use of a Local 79 laborer.  Local 79 admits that DeClara emailed Flavoni, and that Flavoni forwarded that email to Kruse and Ciuzio, and that Kruse responded. To the extent the assertions in DeClara and Kruse's emails are offered to prove the contents therein, Local 79 denies those contentions as unsupported by the record and objects to those contentions as inadmissible hearsay.

101.   Local 79 admits the contention in paragraph 101 of the Statement that Flavoni sent an email with a list of subcontractors and their purported union affiliation, but denies the contents of the email as unsupported by the record, as the contents are inadmissible hearsay.  Local 79 also denies the contention that this list demonstrates plaintiff's "union harmony" as that is argumentative and a legal conclusion, rather than a fact.

102.   Local 79 denies the contention in paragraph 102 of the Statement that Ciuzio rejected a change order for $40,000, as it is unsupported by the record cited.  In the testimony relied upon by plaintiff, Ciuzio testified to rejecting a change order for between $33,000-36,000. (Ciuzio Dep. at 92; Ciuzio Dep. Ex. 14) (rejecting a change order for $36,000). Local 79 denies the contention that the change order was made in response to a "second set of threats," as that states a legal conclusion, rather than a fact, and is contradicted by other record testimony.  (Labate Dep. 255, 306) (denying a threat to picket the mall).  Local 79 admits that Ciuzio told Lindsey that they had a plan in place.  Local 79 denies, however, that any of the

contentions in paragraph 102 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

103.  Local 79 denies the contentions in paragraph 103 of the Statement, as they are not supported by the record cited and are contradicted by other record evidence.  In the testimony relied upon by plaintiff, the designation "high risk" was used for the Old Navy job because of risks that the project would not be completed on schedule.  In the testimony cited by plaintiff, Ciuzio stated that union issues—not Local 79 issues—were "the majority" of the reason for the scheduling delay, but that other factors included site conditions.  In addition, Ciuzio later retracted his use of "majority."  (Ciuzio Dep. at 225-226).  Moreover, the contention that the job was "high risk" because of Local 79 is contradicted by other record evidence that there was a five-day delay in plaintiff getting permits at the mall, a two-day delay caused by an asbestos investigation, a ten-day delay in getting fire alarm information from the mall, a delay related to sprinkler issues, a two-day delay caused by unforeseen HVAC work, a four-day delay due to floor installation system issues, a five-day delay related to the installation of a breaker, and a delay when the flooring machine broke.  (Giovinazzi Dep. at 130-132, 141-43, 146-47, 148, 150-51; Ciuzio Dep. Ex. 36).  In the view of the Gap, some of these delays were attributable to plaintiff.  (Kruse Dep. at 133).  Local 79 also denies that these contentions are material, as they do not show that Local 79 engaged in unlawful conduct that proximately caused plaintiff harm.

104.  Local 79 admits the contentions in the first sentence of paragraph 104 of the Statement but denies the contentions in the second sentence as unsupported by the record cited.  Lindsey said he would support plaintiff "with the discussion."  (Ciuzio Dep. Ex. 15A).

105.   Local 79 admits the contention in paragraph 105 of the Statement regarding the Store Effective Date being moved, but denies the contention regarding the reason, as it is unsupported by the record cited and contradicted by other record evidence.  In the record cited by plaintiff, Ciuzio indicated that the schedule was pushed back for "a number of reasons, including labor actions (work stoppages), unforeseen site conditions, and restrictive Landlord construction requirements."  (Ciuzio Dep. Ex. 20).  The contention that union activity was the primary reason for delays is also contradicted by the record.  (Giovinazzi Dep. at 130-132, 141-43, 146-47, 148, 150-51; Ciuzio Dep. Ex. 36) (evidencing a five-day delay in plaintiff getting permits at the mall, a two-day delay caused by an asbestos investigation, a ten-day delay in getting fire alarm information from the mall, a delay related to sprinkler issues, a two-day delay caused by unforeseen HVAC work, a four-day delay due to floor installation system issues, a five-day delay related to the installation of a breaker, and a delay when the flooring machine broke).  Local 79 also denies that the contentions in paragraph 105 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

106.   Local 79 admits the contention in paragraph 106 of the Statement that Smith and Flavoni spoke by phone on August 13, 2014.  Local 79 denies that a laborer coming in only one day a week was "a problem for Smith," as it is argumentative.  Local 79 admits that Smith requested that a laborer be used three times a week and told Flavoni that a laborer should be used if other trades are on the job.  Local 79 admits that Flavoni told Smith that a laborer was on the Old Navy job due to negotiations with Local 79.  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

29

107.   Local 79 admits the contention in paragraph 107 of the Statement that Flavoni and Kruse corresponded about Flavoni's contact with Smith.  Local 79 denies the contention in the second sentence that Gap was "faced with the advent of triple the cost for a cost the Gap did not want in the first place," as it is argumentative and contradicted by record testimony.  (Labate 88-89, 228) (testifying to an agreement for a laborer to work two or three times per week and then increase as the job picked up).  To the extent that the emails are offered to prove the truth of the matter asserted, Local 79 denies the contentions as unsupported by the record and objects to the emails as inadmissible hearsay.  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

108.   Local 79 admits the contention in paragraph 108 of the Statement, except to note that Johnson also complained on August 19, 2014 of not receiving a response to an August 14, 2014 email.  (Smith Dep. Ex. 1).

109.   Local 79 admits the contention in paragraph 109 of the Statement that Flavoni and Smith spoke by phone on August 19, 2014.  Local 79 denies the characterization of Smith's statements as "threats" as that characterization is a legal conclusion, not a fact, is not supported by the record cited, and is contradicted by other record testimony.  In the recording relied upon by plaintiff, Smith specifically disclaimed his requests as being threats towards plaintiff or any other party.  (Smith Dep. at 144,); (Smith Dep. at 257) (denying ever threatening Flavoni).  Local 79 similarly denies the contention that Smith threatened to picket as unsupported by the recording relied upon.  Smith explained in the recording cited that he was referring to a grievance.  (Smith Dep. at 142-43).  Smith clarified this in his testimony.  (Smith Dep. 152-53).  Local 79 also denies the contention that Linear pulling off the job "was news

to Flavoni" and that he had only received an email from Linear hours earlier, as those contentions are not supported by the record cited.  In the transcript cited by plaintiff, the recording of Smith and Flavoni's call does not include either contention.  Local 79 denies the contention that Smith asked Flavoni to put a laborer on for three days, as that contention is unsupported by the record cited.  In the transcript cited, Smith asked Flavoni if they could put a laborer represented by Local 79 on for two or three days.  Finally, Local 79 denies that the contentions in paragraph 109 are material as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

110.   Local 79 admits the contention in paragraph 110 of the Statement that Flavoni corresponded with Gap and Macerich representatives on August 19, 2014.  To the extent that the emails are offered to prove the truth of the matters asserted therein, Local 79 denies the contentions in paragraph 110 regarding the content of Flavoni's emails as unsupported by the record and objects to those contentions as inadmissible hearsay.  Local 79 admits that Zito did not recall any conversation with Smith but understood the phrase "put up a line" to refer to a picket line.  Local 79 denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

111.   Local 79 admits the contention in paragraph 111 of the Statement that Flavoni emailed Kruse and Ciuzio on August 19, 2014.  To the extent that they are offered to prove the truth of the matter asserted therein, Local 79 denies that the contentions regarding the content of Flavoni's email to Kruse and Ciuzio are supported by the record and objects to the contentions as inadmissible hearsay.  Local 79 admits that Ciuzio understood Smith to be threatening a picket of plaintiff and that he was concerned that a union action would delay the

job.  Local 79 denies that these allegations are material, however, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

112.   Local 79 denies the contention in paragraph 112 of the Statement regarding Local 79 bullying and terrorizing the Gap as unsupported by the record and objects to the contention as inadmissible hearsay.  Local 79 admits that Ciuzio agreed with the statements. Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

113.   Local 79 denies the contentions in paragraph 113 of the Statement as not supported by the record cited and contradicted by other record testimony.  To the extent the contents of the emails cited are offered to prove the matters asserted, Local 79 denies the contention as unsupported by the record cited and as inadmissible hearsay.  In the testimony relied upon by plaintiff, Ciuzio does not state that Macerich "convinced Local 79 to back off." The emails cited by plaintiff indicate that Lindsey planned to talk to Local 79, but no more. Moreover, the contention that Local 79 threatened "to picket the Mall" is contradicted by record testimony.  (Labate Dep. at 211-12) (denying threatening a picket at the May 21 meeting); (Labate Dep. at 255, 306) (denying threatening a picket at the mall).  Local 79 also denies the contention that BD "continued to hold their end of the bargain" as contradicted by other record testimony.  (Labate Dep. at 88-89, 228) (testifying to an agreement for a laborer to work two or three times per week and then increase as the job picked up).  Finally, Local 79 denies that the contentions in paragraph 113 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

**Local 79's Threats and Conduct Towards the Mall and the Gap Caused BD Harm[7]**

114.    Local 79 admits the contentions in paragraph 114 of the Statement, except the characterization of Local 79's communications as threats, as that characterization states a legal conclusion, rather than a fact.  Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

115.    Local 79 denies the contention in paragraph 115 of the Statement that Ciuzio, Kruse, or anyone from Gap ever spoke with a Local 79 member regarding union activity at the mall.  (Kruse Dep. at 12, 27-28).  Local 79 otherwise admits the contentions in paragraph 115.  Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

116.    Local 79 admits the contention in paragraph 116 but denies that this contention is material as, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

117.    Local 79 denies the characterization of its communications as threats, as that characterization states a legal conclusion, rather than a fact.  Local 79 denies that it threatened or directed any union activity at the mall.  (Labate Dep. at 255, 306) (denying threatening a picket at the mall); (Smith Dep. at 144).  Local 79 admits that Flavoni told Smith on one occasion, on August 19, 2014, that he would relay their conversation that same day to the client.  (Transcript of call dated August 19, 2014).  Local 79 otherwise denies that Flavoni told its Local 79 representatives that he would relay their conversations to the client.  (Labate Dec. ¶ 5; Zecca Declaration ¶ 3).  Local 79 also denies that the contentions in paragraph 117 are

---

[7] Local 79 objects to the content of this heading as it states a legal conclusion and is argumentative.

material, as they are not relevant to whether BD suffered damages as a proximate cause of proscribed conduct.

118.   Local 79 denies the contention in paragraph 118 of the Statement that Local 79 picketed the Gap at its corporate office, as unsupported by the record cited by plaintiff. According to the testimony relied upon by plaintiff, any union activity that occurred at the Gap's corporate offices consisted of leafletting and inflating a rat, which do not constitute picketing.  Moreover, the contention that Local 79 engaged in activity at Gaps' corporate office and other locations because of events at the Mall is contradicted by other record evidence. (Kruse Dep. at 145-46) (showing that Local 79's activity concerned Gap's use of All Right for Gap Outlet store at Flatbush); (Ciuzio Dep. Exs. 29-34) (showing that union activity at Gap headquarters was because of Flatbush project).  Local 79 also objects to any reliance on Ciuzio's testimony for the truth of the matter asserted; Ciuzio did not witness the union activity, but was only told about it by a third-party. His testimony is therefore based on inadmissible hearsay.  Local 79 also denies the contention that Local 79 was "apparently forced to back down on the Old Navy project," as that contention is not supported by the record cited by plaintiff. Local 79 also objects to the contentions in paragraph 118 as immaterial, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

119.   Local 79 admits the contention in paragraph 119 of the Statement that there were financial penalties in plaintiff's contract with the Gap.  For the reasons set forth in response to paragraph 103 of the Statement, Local 79 denies that such delays can be attributed to Local 79's lawful union activity.  Finally, Local 79 denies that the contentions in paragraph 119 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

120.    Local 79 denies the contentions in paragraph 120 of the Statement as unsupported by the record cited.  In the testimony relied upon by plaintiff, Ciuzio states that the union activity was one of several factors that contributed to his opinion of plaintiff's work. (Ciuzio Dep. at 147, 148, 238-39) (Ciuzio remarked that plaintiff needed improvement in cost control, following Gap protocol, and that plaintiff did "B+" work and the Gap expects "A" work).  Moreover, it was Kruse who made the decision to remove plaintiff from the approved vendor list.  (Kruse Dep. at 154).  Kruse did so for "issues completely unrelated to the union. (Kruse Dep. at 67).  Therefore, the contention is not material to plaintiff's cause of action, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

121.    Local 79 denies the contention in paragraph 121 of the Statement, as it is not supported by the record cited.  In the testimony relied upon by plaintiff, Ciuzio, when asked, stated that he has no aversion to the use of Local 79, but doesn't want to pay for labor if he already has enough of it.  Local 79 also denies that the contentions in paragraph 121 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

122.    Local 79 denies the contentions in paragraph 122 of the Statement as unsupported by the record cited.  In the testimony relied upon by plaintiff, when referencing the phrase "rogue unions," Zito testified "I don't know who said it, if anyone said it . . ." (Zito Dep. at 104-05).  Local 79 denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

123.    Local 79 denies the contentions in paragraph 123 of the Statement, as unsupported by the record cited and as stating a legal conclusion, rather than a fact.  In the testimony cited by plaintiff, Zito said that Local 79 was "bothering" him, not threatening or

harassing.  Local 79 also denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

124.   Local 79 denies the contentions in paragraph 124 of the Statement as unsupported by the record cited and as contradicted by other record support.  In the testimony relied upon by plaintiff, Zito says that Labate "almost --almost -- almost erred on the side of intimidation." (Labate Dep. at 214-15) (denying that the purpose behind having the grievance at the mall was to intimidate the mall and that he thought the grievance would be intimidating).  Local 79 denies that the contentions in paragraph 124 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

125.   Local 79 admits the contention in paragraph 125 of the Statement that Zito stated that he would shut down the Old Navy job site if Local 79 engaged in picketing.  Local 79 denies that picketing is the only protest activity that Zito said would have caused him to shut down the Old Navy job site, as that contention is contradicted by record testimony.  (Zito Dep. at 41-42) (testifying that his statement "we cannot have union issues here" referred to inflating a rat, as well as picketing); (Transcript of call dated July 1, 2014) (Lindsey stating "if either a picket line is formed, or a rat is blown up, either one of them, we will have to shut down the job).  Local 79 also denies that the contentions are material, as they do not show that Local 79 engaged in unlawful conduct that proximately caused plaintiff harm.

126.   Local 79 denies the contention in paragraph 126 of the Statement that threats of shutting down power to the mall were made and, if they were made, that they were attributable to Local 79, for the reasons set forth in response to paragraph 48.  (Zito Dep. at 66-67) (testifying that Local 3 representative attended the meeting and had concerns with the job); (Labate Dep. at 211-12) (denying threatening a picket at the May 21 meeting); (Labate Dep. at

255, 306) (denying threatening a picket at the mall); (Labate Dep. at 218) (denying a threat to

shut down power to the mall); (Ross Dep. at 130:12-16) (testifying that Labate did not mention

a picket line or a rat in the July 1 meeting).  Local 79 also objects that the contention concerning

a threat to picket the job, as unsupported by the record cited by plaintiff.  In the testimony relied

upon by plaintiff, such contention is based on inadmissible hearsay. (Ciuzio Dep. at 60)

(recalling conversations about Local 79 picketing or threatening to picket).  Local 79 also

denies the contention that Ciuzio made more frequent visits to the job site because of union

activity or threats of union activity, as that contention is contradicted by the record cited by

plaintiff.  When asked if he made increased trips because of union issues, Ciuzio testified:  "No,

not necessarily because of the union issues . . ." and that increased frequency was "not

specifically to deal with the union, but to try to assess the level of progress."  (Ciuzio Dep. at

61-62).  Local 79 also denies the contention that the Gap collectively spent about 40 hours

dealing with union issues.  (Ciuzio Dep. at 64-66) (testifying that he did not advise Gap of

taking extra time on project, that "[i]t would be difficult to assess" the amount of time spent on

union issues, that Gap doesn't track hours spent on specific issues, and that he could not

estimate a percentage of time spent by Gap on union issues, before saying that 40 hours is "a

good guess").  Finally, Local 79 denies that these contentions are material, as they are not

relevant to whether BD suffered damages as a proximate result of proscribed conduct.

       127.   Local 79 admits the contention in paragraph 127 of the Statement that

Smith testified to wanting Flavoni to contact Macerich, but denies that Smith wanted Flavoni to

"relay his threats" to Macerich, as that contention is not supported by the record cited by

plaintiff.  Smith testified only that he wanted Flavoni to contact Macerich regarding the contents

of the conversation, not that he wanted him to relay any threats.  Local 79 also denies that Smith

made threats, as that contention is argumentative, states a legal conclusion and is contradicted by the record.  (Smith Dep. at 144) (asking Flavoni not to take their conversation as a threat); (Smith Dep. at 257) (denying ever threatening Flavoni).  Local 79 denies that the contentions in paragraph 127 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

128.   Local 79 denies the contention in paragraph 128 of the Statement that Smith made threats, as the contention is argumentative, states a legal conclusion and is contradicted by the record.  (Smith Dep. at 144) (asking Flavoni to not take their conversation as a threat); (Smith Dep. at 257) (denying ever threatening Flavoni).  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

129.   Local 79 denies the contentions in paragraph 129 of the Statement as unsupported by the record cited by plaintiff.  In the record cited by plaintiff, Smith does not testify to threats or wanting anything relayed to Macerich.  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

130.   Local 79 denies the contention in paragraph 130 that Smith spoke to Lindsey and mentioned setting up a picket line as contradicted by other record testimony. While Smith initially said that he mentioned a picket line to Lindsey, he later corrected the record and stated:  "It was never any line or anything mentioned.  I told him that there may be a strong possibility there may be another Building Trades grievance that would be with BD Development."  (Smith Dep. at 202).  Local 79 denies that Lindsey asked Smith not to set up a picket line, as that contention is not supported by the record cited by plaintiff.  In recounting his

conversation with Lindsey, Smith did not testify to Lindsey asking Smith not to set up a picket line.  That contention is also contradicted by other record testimony, as Smith later corrected the record and stated that he did not mention a picket line to Lindsey.  (Smith Dep. at 202).  Local 79 admits that Lindsey told Smith he did not want to be dealing with this.  Local 79 denies the contentions contained in Smith's recounting of Lindsey's words, as they are inadmissible hearsay if offered to prove the truth of the matter asserted.  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

131.   Local 79 denies the contentions in paragraph 131 of the Statement, as it is not supported in the record.  Local 79 did not engage in picketing or any activity other than the inflated rat and handing out leaflets at Brookdale.  (Duggan Dep. at 45-46; Fast Dep. at 30; Connolly Dep. at 31-32; Edwards Dep. at 50; Williamson Dep. at 79-80; Weigel Dep. at 37, 48).

132.   Local 79 denies the contentions in paragraph 132 of the Statement, as unsupported by the record cited.  In the testimony relied upon by plaintiff, Labate admits that a business manager told him to do "the rat, the leafleting, picketing or whatever."  (Labate Dep. at 284).  The contention that Labate threatened a picket is also contradicted by record evidence.  (Labate Dep. at 211-12) (denying threatening to picket at the May 21 meeting); (Labate 255, 306) (denying threatening to picket the mall).  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

133.   Local 79 denies the contentions in paragraph 133 of the Statement, as unsupported by the record cited.  In the testimony relied upon by plaintiff, Zecca testified that

the question of whether or how to respond to a rat or a picket line "depends on the individual," that he hoped a member would honor a picket line, and that a member's response to a picket line or rat could include coming out on lunch breaks, informing him or herself of the situation, or other actions besides not going to work.  Local 79 also denies the contention that the rat serves as a "signal" to do anything.  In the testimony relied upon by plaintiff, Zecca testified that the purpose of the rat is "to inform the public or people on the jobsite that there is an issue. That's it."  Local 79 finally denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

134.   Local 79 denies the contentions in paragraph 134 of the Statement, as they are not supported by the record cited.  In the testimony relied upon by plaintiff, Labate testifies that organizers control the job action and that there is no condition that automatically ends a job action.  Local 79 also denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

135.   Local 79 denies the contentions in paragraph 135 of the Statement as unsupported by the record cited and contradicted by other record testimony.  In the testimony cited by plaintiff, Labate did not say he considers it normal to threaten picket lines at jobs; he said that picket lines are normal and that organizers (not him) establish picket lines daily.  Local 79 denies that "Labate failed to deny that he threatened a picket line to Zito."  In the testimony cited by plaintiff (and elsewhere), Labate repeatedly denied making such a threat.  (Labate Dep. at 305) ("That's what [Flavoni] said, but that never happened"); (Labate Dep. at 306) ("Again, I didn't.  I never threatened the mall").  In the testimony cited by plaintiff, Labate was discussing a conversation with Flavoni in which Flavoni claimed that Macerich had told Flavoni that Labate threatened Macerich, and Labate stated that Macerich perhaps said that to Flavoni to

"shake Flavoni up."  Local 79 admits the contention that Labate testified that it is more normal for him to say he would turn a dispute over to organizers who "are going to do whatever they do" but denies that Labate made such a comment to Macerich.  (Labate Declaration ¶ 3).  In the testimony cited by plaintiff, Labate did not say he did not feel the need to disagree with what Flavoni said because Labate threatened picket lines so often; Labate testified he did not feel the need to disagree with what Flavoni said because picket lines are common.  Local 79 also denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

136.   Local 79 denies the contentions in paragraph 136 of the Statement regarding Kruse's opinion of Rondholz's out of court statement, as the statement constitutes inadmissible hearsay.  Local 79 also denies the contention concerning Kruse's characterization of Local 79 as "terrorists," as unsupported by the record.  Kruse referred to those comments as "tongue and cheek." (Kruse Dep. at 97:21).  Finally, Local 79 denies that the contentions in paragraph 136 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

137.   Local 79 admits the contention in paragraph 137 of the Statement, but denies this contention is material as the picketing occurred on August 20, 2104 and was "referencing another project," by another contractor than plaintiff.  (Ciuzio Dep. Ex. 26).

138.   Local 79 admits the contentions in paragraph 138 of the Statement.

139.   Local 79 denies the contention in paragraph 139 of the Statement as it states a legal conclusion, rather than a fact.  Local 79 also denies the contentions as unsupported by the record cited and as contradicted by other record evidence.  The Exhibit cited simply lists supposed costs incurred or profits lost; it does not establish that plaintiff was damaged by Local

79's conduct.  (Kruse Dep. at 68-69) ("The reason behind [the Gap's removal of plaintiff] was more about how [plaintiff] handled the situation with [Local 79] as opposed to the union issue"); (Kruse Dep. at 54-55, 68-69, 70-71, 90) (Kruse discussing the inability of plaintiff to deal with union issues without involving Gap staff, the length of time it took for plaintiff to address the union issue, and the $33,000 change order plaintiff submitted for the cost of using Local 79 laborers for demolition); (Kruse Dep. at 67) (Kruse discussing "issues completely unrelated to the union" as reasons for removal); (Kruse Dep. at 70, 120, 126-27, 131-32, 153, 155-57); (Kruse identifying issues ranging from plaintiff's poor communication with Gap throughout the project, plaintiff's refusal to reimburse the mall for a fire alarm invoice, plaintiff's inability to submit low bids on future contracts, and plaintiff failing to win the bids it submitted); (Ciuzio Dep. at 147, 148, 238-39) (Ciuzio remarking that plaintiff needed improvement in cost control, following Gap protocol, and that plaintiff did "B+" work and the Gap expects "A" work).

**BD Is an Approved General Contractor for CBRE and Is Awarded a Job for BofA**

> 140.   Local 79 admits the contention in paragraph 140 of the Statement.
>
> 141.   Local 79 admits the contention in paragraph 141 of the Statement.
>
> 142.   Local 79 admits the contention in paragraph 142 of the Statement.
>
> 143.   Local 79 admits the contention in paragraph 143 of the Statement.
>
> 144.   Local 79 admits the contention in paragraph 144 of the Statement.
>
> 145.   Local 79 admits the contention in paragraph 145 of the Statement.
>
> 146.   Local 79 admits the contention in paragraph 146 of the Statement.
>
> 147.   Local 79 admits the contention in paragraph 147 of the Statement.

**Local 79 Descends Upon BofA and CBRE[8]**

148.   Local 79 admits the contention in paragraph 148 of the Statement.

149.   Local 79 admits the contention in paragraph 149 of the Statement that on April 25, 2013, Local 79 inflated a rat and handed out leaflets at the 95 Wall job site.  Local 79 denies the contention that it engaged in picketing on April 25, 2013, as that contention states a legal conclusion, rather than a fact, and is contradicted by other record evidence.  (Zecca Dep. at 64-65, 109) (testifying that there were no "bull horns" "placards, pickets, anything like that, and that there was no "organized picketing"); (Lee Dep. at 17) (Local 79 engaged in an information action).  Local 79 also denies the contention that it blocked the entrance to the job site, as that contention is not supported by the record.  (Zecca Declaration ¶ 2; Lee Declaration ¶ 2).  Local 79 denies that these contentions are material as they do not show that Local 79 engaged in unlawful conduct that proximately caused plaintiff harm.

150.   Local 79 admits the contention in paragraph 150 of the Statement.

151.   Local 79 admits the contention in paragraph 151 of the Statement.

152.   Local 79 denies the contention in paragraph 152 of the Statement that the Local 79 members were picketing, as that contention is unsupported by the record cited and contradicted by other record evidence. (Zecca Dep. at 64-65, 109) (testifying that there were no "bull horns" "placards, pickets, anything like that, and that there was no "organized picketing"); (Lee Dep. at 17).

153.   Local 79 admits the contention in paragraph 153 of the Statement.

154.   Local 79 admits the contention in paragraph 154 of the Statement that its employees and members were handing out leaflets near the entrance of 95 Wall and that

---

[8] Local 79 objects to this heading, as it is argumentative and states a legal conclusion.

Lapidus claims to have asked them to move twice before entering the site.  Local 79 denies the contention that it blocked the entrance, as a legal conclusion unsupported by the record cited and contradicted by other record evidence.  (Lee Declaration ¶ 2; Zecca Declaration ¶ 2).  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

155.   Local 79 admits to the contention in paragraph 155 of the Statement that Lapidus testified to being intimidated, but denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

156.   Local 79 admits the contention in paragraph 156 of the Statement.

**Carpenters' Union Employees Stand in Solidarity with Local 79's Picketing[9]**

157.   Local 79 admits the contention in paragraph 157 of the Statement.

158.   Local 79 admits the contention in paragraph 158 of the Statement.

159.   Local 79 admits the contention in paragraph 159 of the Statement.

160.   Local 79 denies the contention in paragraph 160 of the Statement that NYC Acoustics carpenters were supposed to be present at 95 Wall at 6:30 a.m. on the day of Local 79's informational action as contradicted by other record testimony.  (DePetro Dep. at 21) (testifying that he "was on the job from before 7:00, say 6:30 to 3:00 o'clock," but not testifying to an expected 6:30 a.m. start time).  Local 79 denies the contention that the carpenters "arrived and left because of the presence of Local 79 agents" as unsupported by the record cited and as contradicted by other record evidence.  (DePetro Dep. at 34-35) (testifying to having no recollection of NYC Acoustics Carpenters leaving the job site due to union activity and, when asked if he has reason to believe Lapidus's email was accurate, stating "I don't see myself there

---

[9] Local 79 disputes the content of this heading, as it states a legal conclusion and as Local 79 denies that it engaged in picketing, as that contention is not supported by the record.

for fifteen minutes"). Local 79 also denies and objects to the contentions as supported by inadmissible hearsay.

161.   Local 79 denies the contention in paragraph 161 of the Statement that there is a protocol for a Building Trades member to follow when arriving at a job site where a rat is present, as unsupported by the record cited. In the testimony relied upon by plaintiff, DePetro spoke as a member of the Carpenters Union, not as a member a BCTC local generally, and the protocol he gave was specific to how NYC Acoustics handles such situations. The contentions are also contradicted by other record evidence. (Zecca Dep. at 47-48) (denying that there is an understanding or written requirement that BCTC locals honor job actions of another BCTC local). Local 79 admits the contention that, according to DePetro, if he arrived at a worksite where a rat was inflated he would call his employer and inform them of the situation and go into work until told to stop by his employer. Local 79 also denies all references in paragraph 161 to a picket line, as unsupported by the record cited and as improperly conflating the inflation of a rat and leafletting with a picket line. Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

162.   Local 79 denies the contentions in paragraph 162 of the Statement, as they are unsupported by the record cited. Local 79 denies that the testimony relied upon by plaintiff establishes whether or not it would be commonplace for an employee who is a member of a local within the BCTC to with the business agent conducting union activity. As in paragraph 161, DePetro testified as to his own experience as a member of the Carpenters' Union, employed by NYC Acoustics, and did not generalize as to other members of BCTC locals. Moreover, in the testimony cited by plaintiff, DePetro said he would speak to his union, not to

the union conducting the activity, and that it was a foreman of NYC Acoustics (not a Carpenters' Union representative) who directed him (on very few other occasions and at another jobs involving a picket line) to cease working.   (DePetro Dep. at 31:9-13).

163.   Local 79 admits the contention in paragraph 163 of the Statement that DePetro has no memory of a rat, union activity, or a work stoppage at the 95 Wall work site. Local 79 specifically denies any references to a picket line contained in paragraph 163 as Local 79 did not engage in picketing at 95 Wall.  (Zecca Dep. at 64-65, 109; Lee Dep. at 17).  Local 79 also denies that the contentions in paragraph 163 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

164.   Local 79 denies the contentions in paragraph 164 of the Statement as unsupported by the record cited.  In the testimony cited by plaintiff, DePetro discusses his obligation as a member of the Carpenters' Union to participate in activity organized by the Carpenters' Union and forms completed when doing so.  Local 79 also denies that the contentions in paragraph 164 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

165.   Local 79 denies the contention in paragraph 165 of the Statement as unsupported by the record and objects to the contention, as it is based on inadmissible hearsay if offered for the truth of the matter asserted.  Local 79 also denies that the contentions in paragraph 165 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

166.   Local 79 denies the contention in paragraph 166 of the Statement as unsupported by the record and objects to the contention, as it is based on inadmissible hearsay if offered to prove the truth of the matter asserted.  Local 79 also denies the references in

paragraph 166 to "the line," as Local 79 did not establish a picket line at 95 Wall.  (Zecca Dep. at 64-65, 109; Lee Dep. at 17).  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

167.   Local 79 denies the contention in paragraph 167 of the Statement as unsupported by the record and objects to the contention, as it is inadmissible hearsay if offered to prove the truth of the matter asserted.  Local 79 also denies that it set up a picket line, as that contention is contradicted by record testimony.  (Zecca Dep. at 64-65, 109; Lee Dep. at 17).  Moreover, the Exhibit cited by plaintiff is an email that refers to a lack of manpower in May 2013, several weeks after the inflated rat.  (Giovinazzi Dep. Ex. 9).  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

168.   Local 79 admits the contention in paragraph 168 of the Statement that Lapidus sent daily logs of events that occurred at the 95 Wall job cite.  Local 79 admits the contention in the second and third sentences of paragraph 168 regarding the contents of the log. To the extent that the contents of the log are offered to prove the truth of the matter asserted, Local 79 objects to the contentions as inadmissible hearsay.  Local 79 also disputes the characterization of Local 79's members as "picketers."  (Zecca Dep. at 64-65, 109; Lee Dep. at 17).  Local 79 did not engage in picketing at 95 Wall.  Finally, Local 79 denies that the contentions in paragraph 168 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

169.   Local 79 admits the contention in paragraph 169 of the Statement that Lapidus emailed Flavoni and Deliteris on the morning of April 25, 2013.  Local 79 admits the contentions in the second sentence of paragraph 169 to the extent that they are offered to

characterize a portion of the email.  To the extent that they are offered to prove the truth of the

matter asserted, Local denies the contentions made therein as unsupported by the record and

objects to the contentions as inadmissible hearsay.  Local 79 specifically denies the contentions

regarding NYC Acoustics, as those contentions are hearsay within hearsay and cannot be

offered to prove the truth of the matter asserted.  Local 79 also denies that the contentions are

material, as they are not relevant to whether BD suffered damages as a proximate result of

proscribed conduct.

   170.  Local 79 denies the contentions in paragraph 170 of the Statement, as it

states a legal conclusion, rather than a fact.  Moreover, the evidence in the record does not

support the conclusion that any work stoppage by NYC Acoustics employees was a result of

Local 79's union activity, and all evidence relied upon by plaintiff is inadmissible hearsay.

(Lee Dep. at 80-82) (denying communicating with anyone from BofA, CBRE, or NYC

Acoustics); (Zecca Dep. at 65-66, 75-77) (denying communicating with anyone from BofA,

CBRE, NYC Acoustics, or any other contractor).  Finally, Local 79 denies that the contentions

are material, as they are not relevant to whether BD suffered damages as a proximate result of

proscribed conduct.

   171.  Local 79 denies the contentions in paragraph 171 of the Statement that

Jeannie Choi contacted BD and stated the Bank of America was contacted by Local 79, as

unsupported by the record cited.  First, the contents of any such communication between Choi

and BD would be inadmissible hearsay if offered to prove that Local 79 contacted Bank of

America.  Furthermore, in the testimony relied upon by plaintiff, Giovinazzi states that she was

not on the call and did not speak to Choi.  (Giovinazzi Dep. at 27:17-22).  In addition, Local

denies the contentions as contradicted by other record evidence.  Local 79 never contacted

CBRE or Bank of America.  (Lee Dep. at 80-82, 90; Zecca Dep. at 65-66, 75).  Finally, even if the contentions were supported by the record, Local 79 denies that they are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

 172. Local 79 admits the contention in paragraph 172 of the Statement.

 173. Local 79 admits the contention in paragraph 173 of the Statement.

 174. Local 79 denies the contentions in paragraph 174 of the Statement, as unsupported by the record cited and as contradicted by other record evidence.  In the testimony relied upon by plaintiff, Deliteris cannot recall who from CBRE he spoke with or any of the details about the call.  He remembers generally that the representative "said that we need to make them stop, we need to make them go away," but the contention that this was stated "in no uncertain terms" is not supported by the record.  (Deliteris Dep. at 82-84).  Moreover, the contention that CBRE instructed BD to resolve the issue with Local 79 is contradicted by other record evidence.  (Wilde Dep. at 25-26); (Flavoni Dep. at 61-62) (testifying that CBRE was not involved in the resolution).  Finally, Local 79 also denies that the contentions in paragraph 174 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

 175. Local 79 admits the contention in paragraph 175 of the Statement that Wilde claims to have learned from Martin certain allegations about Local 79's conduct but to the extent plaintiff offers Martin's supposed comments to Wilde as proof of the matters Martin asserted, Local 79 objects to the contention as based on inadmissible hearsay.  Local 79 denies the contention that Lapidus was blocked from entering the job site and denies the contention that Local 79 made any request of NYC Acoustics.  (Lee Dep. at 80-82) (denying

communicating with anyone from BofA, CBRE, or NYC Acoustics); (Zecca Dep. at 65-66, 75-77); (Lee Declaration ¶ 2; Zecca Declaration ¶ 2).

176.   Local 79 admits the contention in paragraph 176 of the Statement that CBRE and Bank of America consider themselves to be union-friendly companies and that both companies have serious concerns about any union activity conducted at their job sites.  Local 79 denies the contentions that union activity at Bank of America work sites "causes distress" to relationships between Bank of America and CBRE and between CBRE and BD, as this statement is argumentative and not supported in the record cited.  In the testimony relied upon by plaintiff, Wilde merely said that such conduct can "affect" those relationships.  (Wilde Dep. at 21:24-22:8).  Local 79 also denies that the contentions in paragraph 176 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

**Pressured By Local 79, CBRE and BofA Insist on BD Hiring a Laborer[10]**

177.   Local 79 denies the contention in paragraph 177 of the Statement that plaintiff was "forced" to hire a laborer as that contention is argumentative and is not supported by the record, despite Wilde's characterization that plaintiff was "forced."  (Wilde Dep. at 25-26, 36) (testifying that CBRE was not involved in BD's hiring a Local 79 laborer and plaintiff did not speak with CBRE or BofA before hiring Riteway as a paymaster).  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

---

[10] Local 79 objects to this heading's characterization of CBRE and BofA being "pressured" by Local 79, as the contention is argumentative, states a legal conclusion, and is not supported by the record.  (Wilde Dep. at 25-26, 36).  Also such contentions are immaterial, they do not show that Local 79 engaged in unlawful conduct that caused plaintiff harm.

178.   Local 79 admits the contentions in paragraph 178 of the Statement, but denies that they are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

179.   Local 79 admits the contentions in paragraph 179 of the Statement, but denies the characterization that "BD acquiesced to Local 79's demands," as it is argumentative. Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

180.   Local 79 admits the contention in paragraph 180 of the Statement that a paymaster is a Local 79 signatory.  Local 79 denies the contention that a paymaster pays for a laborer provided by Local 79, as that contention is not supported by the record cited.  A paymaster pays for a laborer represented by Local 79.

181.   Local 79 denies the contentions contained in paragraph 181 of the Statement to the extent they contend that Riteway is "part" of a collective bargaining agreement with Local 79 as not supported by the record.  Riteway is party to a collective bargaining agreement with Local 79.

182.   Local 79 admits the contention in paragraph 182 of the Statement that plaintiff's representative Giovinazzi and Riteway's representative Piecora exchanged emails on April 26 and April 30, 2013.  To the extent that those emails are offered to prove the truth of the matter asserted, Local 79 denies the contentions contained in the email from Giovinazzi to Riteway regarding Local 79's conduct, as such contentions are inadmissible hearsay and contradicted by other record evidence.  Local 79 denies all references to any picketing as no picketing occurred.  (Zecca Dep. at 64-65, 109; Lee Dep. at 17).  Local 79 admits that Piecora testified she understood Giovinazzi's email to mean that Riteway was being hired as paymaster

because Local 79 was picketing.  Local 79 admits the contention that plaintiff agreed to put a laborer on the job site with Riteway as paymaster.  Finally, Local 79 denies that the contentions in paragraph 182 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

**Local 79's Threats and Conduct Toward the CBRE and BofA Caused BD Harm[11]**

183.   Local 79 denies the contention in paragraph 183 of the Statement that plaintiff communicated with BofA or CBRE before reaching an agreement to hire a Local 79 laborer.  (Wilde Dep. at 25-26, 36).  Local 79 also denies that the contentions in paragraph 183 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

184.   Local 79 denies the contention in paragraph 184 of the Statement, as it is contradicted by the record.  Local 79 had no contact with anyone at BofA or CBRE.  (Lee Dep. at 80-82, 90; Zecca Dep. at 65-66, 75-77).  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

185.   Local 79 denies the contentions in paragraph 185 of the Statement as unsupported by the record.  (Wilde Dep. at 25-26, 36) (testifying that CBRE and BofA were not involved in the resolution); (Flavoni 61-62) (testifying that he informed CBRE of the issue but not that CBRE wanted to be informed of everything to BD).  Local 79 also denies that the contentions are material as are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

---

[11] Local 79 objects to the content of this heading, as it states a legal conclusion, is argumentative, and states facts not supported by the record.  Specifically, there is no evidence in the record that Local 79 made any threats or took any action directed at CBRE or BofA.  The allegation that Local 79 caused plaintiff harm is a legal conclusion, not a fact.

186.   Local 79 denies the contentions in paragraph 186 of the Statement, as contradicted by other evidence in the record.  Local 79 denies that it directed any union activity at CBRE or Bank of America.  (NYC Acoustics Dep. Ex. 4) (flyers from the information line directing protest at plaintiff); (Lee Dep. at 80-82, 90; Zecca Dep. at 65-66, 75-77) (testifying that Local 79 had no contact with BofA or CBRE).  Local 79 also denies that Flavoni told Local 79 representatives that he would relay the Union's message to Bank of America or CBRE. (Zecca Declaration ¶ 3).  Finally, Local 79 denies that the contentions in paragraph 186 are material, as are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

187.   Local 79 denies the contentions in paragraph 187 of the Statement, as they are not supported by the record cited by plaintiff.  In the testimony relied upon by plaintiff, Wilde was asked whether or not union protests "could have led to the termination of BD from the project," and Wilde responded:  "That would be extreme, but yes."  (Wilde Dep. at 59:3-8). Wilde did not discuss BD's status as an approved vendor of CBRE.  Local 79 also denies that the contentions in paragraph 187 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

188.   Local 79 denies the contention in paragraph 188 of the Statement that Bank of America recommended against using plaintiff due to Local 79's activity, as unsupported by the record cited.  In the testimony relied upon by plaintiff, Wilde testifies to "apprehension" caused by press coverage of BD's lawsuit against Local 79.  (Wilde Dep. at 39). Wilde also testifies that she has awarded BD work for Bank of America after April 2013.  The contention is also contradicted by other record testimony.  When asked if she knew why Bank of America recommended against plaintiff on certain jobs, Wilde responded:  "Not specifically,

no." (Wilde Dep. at 88).  Local 79 also denies that the contentions in paragraph 188 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

189.   Local 79 admits the contention in paragraph 189 of the Statement that plaintiff was the lowest bidder on a BofA project in Brooklyn on Flatbush Avenue, and that plaintiff was not selected to perform the job.  Local 79 denies the contention that plaintiff was not selected "due to concerns about Local 79's propensity for conducting union activity" at plaintiff's job sites, as that contention is not supported by the record cited by plaintiff and is contradicted by other record testimony.  In the record cited by plaintiff, Wilde does not testify as to the reason that plaintiff was not chosen for the Flatbush project.  Moreover, Wilde testified that she does not know the specific reason why BofA recommended against using plaintiff on large high profile projects.  (Wilde Dep. at 88).  Local 79 also denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

190.   Local 79 admits the contention in paragraph 190 of the Statement that plaintiff was excluded from high-profile bids over $500,000 in New York City for a period of approximately eighteen months between April 2013 and April 2015.  Local 79 denies the contention that plaintiff was excluded from "all" Bank of America bids, as the record cited by plaintiff does not support that contention.  Local 79 also denies that the contentions in paragraph 190 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

191.   Local 79 denies the contentions in paragraph 191 of the Statement, as they are unsupported by the record cited by plaintiff and contradicted by other record testimony.  In

the testimony relied upon by plaintiff, Wilde testifies that it is her understanding that plaintiff was excluded from BofA bids because of reputational risk.  However, Wilde testified that she does not know the specific reason that plaintiff was excluded from BofA bids.  (Wilde Dep. at 88).  Finally, Local 79 denies that the contentions in paragraph 191 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

192.   Local 79 admits the contention in paragraph 192 of the Statement.

193.   Local 79 denies the contention in paragraph 193 of the Statement, as it states a legal conclusion, not a fact.  The contention is also directly contradicted by the record, as Local 79 did not engage in picketing.  (Zecca Dep. at 64-65, 109; Lee Dep. at 17).

194.   Local 79 admits the contentions in paragraph 194 of the Statement, but denies that those contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

195.   Local 79 admits the contention in paragraph 195 of the Statement that plaintiff's failure to abide by the union-harmony clause contained in its contract could lead to its termination from the project, but notes that the testimony relied upon by plaintiff establishes that termination would be "extreme." (Wilde Dep. at 59:3-8).  Local 79 also denies that the contentions in paragraph 195 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

196.   Local 79 denies the contention in paragraph 196 of the Statement, as it states a legal conclusion, rather than a fact.  Local 79 also denies the contentions as unsupported by the record cited and as contradicted by other record evidence.  The Exhibit cited simply lists supposed costs incurred or profits lost; it does not establish that plaintiff was damaged by Local 79's conduct.  (Wilde Dep. at 88).

**The Mount Sinai Job at One Gustave L. Levy Place, New York, NY**

**BD is Awarded the Emergency Room Observation Unit Job for Mt. Sinai**

197.   Local 79 admits the contention in paragraph 197 of the Statement.

198.   Local 79 admits the contention in paragraph 198 of the Statement.

199.   Local 79 admits the contention in paragraph 199 of the Statement.

**Local 79 Descends Upon Mt. Sinai[12]**

200.   Local 79 denies the contention in paragraph 200 of the Statement that Chang was contacted by Local 79 and informed that Mt. Sinai must use Local 79 to perform work within their jurisdiction, as that contention is not supported by the record cited.  In the testimony relied upon by plaintiff, Chang testified that, while he was called by a union, he could not recall which union.  (Chang Dep. at 13-16).

201.   Local 79 denies the contentions in paragraph 201 of the Statement that Local 79 threatened union activity at Mt. Sinai and that Local 79 engaged in union activity at Mt. Sinai, as such contentions are not supported by the record.  In the testimony relied upon by plaintiff, Chang does not remember which union threatened union activity, he does not remember which union engaged in union activity, and he does not remember any specific details about the union activity that occurred while plaintiff was working at Mt. Sinai.  (Chang Dep. at 17:6-20, 19:7-12, 22:18-23:11, 24:9-25:19).

202.   Local 79 denies the contentions in paragraph 202 of the Statement as unsupported by the record cited.  In the testimony cited, Chang says spoke with BD about resolving the issue with the union that inflated the rat, but Change never identifies Local 79 as the union that inflated the rat.  Moreover, Chang testified that Mt. Sinai did not want to see a rat

---

[12] Local 79 objects to the content of this heading, as the verb "descends" is argumentative.

in front of the hospital; he did not refer to the rat as "not a good thing." Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

203.    Local 79 denies the contentions in paragraph 203 of the Statement because they are not supported by the record cited and contradicted by other record testimony. In the testimony relied upon by plaintiff, Giovinazzi admits that her only knowledge of the Mt. Sinai project was relayed to her through a third party, probably, but not necessarily Joe Iannotti. (Giovinazzi Dep. at 43:6-17). To the extent that the relaying of this information is offered to prove the truth of the matter asserted, Local 79 denies the contention as unsupported by the record and objects to the contention as inadmissible hearsay. Giovinazzi also admitted in her testimony that she does not know the difference between Local 79 and the Carpenters' Union. (Giovinazzi Dep. at 45:6-14). Local 79 further denies that the contentions in paragraph 203 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

**Local 79's Threats and Conduct Towards Mt. Sinai Caused BD Harm[13]**

204.    Local 79 denies the contention in paragraph 204 of the Statement that Local 79 made threats or conducted union activity at Mt. Sinai for the reasons stated in the responses to paragraphs 200 and 201. Moreover, the contentions in paragraph 204 are contradicted by other record evidence. Both Flavoni and Deliteris testified that they never spoke to anyone from Local 79 regarding Mt. Sinai. (Flavoni Dep. at 84-85; Deliteris Dep. at 28). Finally, Local 79 further denies that the contentions in paragraph 204 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

---

[13] Local 79 disputes the content of this heading, as it states a legal conclusion and contain facts that have not been established by the record.

205.   Local 79 denies the contention in paragraph 205 of the Statement that Local 79 issued any communications to Chang or other representatives of Mt. Sinai for the reasons stated in the responses to paragraphs 200 and 201.  Local 79 further denies that the contentions in paragraph 205 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

206.   Local 79 denies the contention in paragraph 206 of the Statement that Local 79 made threats or conducted union activity at Mt. Sinai for the reasons stated in the responses to paragraphs 200 and 201.  Local 79 further denies that the contentions in paragraph 206 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

207.   Local 79 denies the contention that Local 79 made threats or conducted union activity at Mt. Sinai for the reasons stated in the responses to paragraphs 200 and 201. Local 79 denies the contention that "Flavoni informed the Local 79 agents that he would relay their message to Mt. Sinai" as contradicted by the record evidence where Flavoni admitted he never spoke to any Local 79 agents regarding Mt. Sinai.  (Flavoni Dep. at 84-85).  Local 79 further denies that the contentions in paragraph 207 are material, as they do not show that Local 79 engaged in unlawful conduct that proximately caused plaintiff harm.

208.   Local 79 denies the contention in paragraph 208 of the Statement that Local 79 made threats to picket Mt. Sinai, as that contention is not supported by the record cited.  In the testimony cited, Flavoni does not recount any threat made by Local 79 toward the Mt. Sinai job.  (Flavoni Dep. 91:19-95:21).  Flavoni testified that he was told by a BD employee there would be problems if they did not use Local 79, but those conversations do not reference Local 79 making any direct or specific communication in connection with the Mt. Sinai job.  To

the extent plaintiff relies on what a BD employee supposedly told Flavoni as proof that Local 79 made a threat to picket or engage in any other union activity, Local 79 denies the contention as unsupported by the record cited and as inadmissible hearsay.  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

209.   Local 79 denies the contention in paragraph 209 of the Statement, as it states a legal conclusion, not a fact.  Local 79 also denies the contentions as unsupported by the record cited and as contradicted by other record evidence.  The Exhibit cited simply lists supposed costs incurred or profits lost; it does not establish that plaintiff was damaged by Local 79's conduct.  (Chang Dep. at 17:6-20, 19:7-12, 22:18-23:11, 24:9-25:19) (showing no evidence that Local 79 contacted Mt. Sinai); (Flavoni Dep. 91:19-95:21) (showing no evidence that Local 79 contacted Flavoni regarding Mt. Sinai).

**The Brookdale Job at 1110 Pennsylvania Avenue, Brooklyn, NY**

**BD is Awarded the Brookdale Clinic Job**

210.   Local 79 admits the contention in paragraph 210 of the Statement, except to note that the record cited by plaintiff does not establish the hospital's precise street address.

211.   Local 79 admits the contention in paragraph 211 of the Statement, except to note that the record cited by plaintiff does not establish the job site's precise street address.

212.   Local 79 admits the contention in paragraph 212 of the Statement, but the record cited by plaintiff does not support this contention.

213.   Local 79 admits the contention in paragraph 213 of the Statement.

214.   Local 79 admits the contention in paragraph 214 of the Statement.

215.   Local 79 admits the contention in paragraph 215 of the Statement.

216.   Local 79 admits the contention in paragraph 216 of the Statement, except to note that the individual in question's last name is "Duggan."

217.   Local 79 admits the contention in paragraph 217 of the Statement.

218.   Local 79 admits the contention in paragraph 218 of the Statement.

219.   Local 79 admits the contention in paragraph 219 of the Statement.

220.   Local 79 admits the contention in paragraph 220 of the Statement.

221.   Local 79 admits the contention in paragraph 221 of the Statement.

222.   Local 79 admits the contention in paragraph 222 of the Statement.

223.   Local 79 admits the contention in paragraph 223 of the Statement.

224.   Local 79 admits the contention in paragraph 224 of the Statement.

225.   Local 79 admits the contention in paragraph 225 of the Statement, except to note that the business agents who came to the job site included business agents from the Carpenters' Union.  (Weigel Dep. at 25:9-16).

226.   Local 79 admits the contention in paragraph 226 of the Statement.

**Local 79 Descends Upon Brookdale Hospital[14]**

227.   Local 79 admits that paragraph 227 of the Statement accurately reflects the contents of Weigel's log for April 24, 2014, but denies the assertions regarding the content of the conversation, as they are inadmissible hearsay.

228.   Local 79 admits the contention in paragraph 228 of the Statement.

229.   Local 79 admits the contention in paragraph 229 of the Statement that Williamson called Brookdale three times.  Local 79 denies that Williamson called "claiming the work," as that contention is unsupported by the record and contradicted by record testimony.

---

[14] Local 79 disputes the use of the term "descends" as it is argumentative.

(Williamson Dep. at 17) (testifying that the purpose of the call was "to ensure that working standards are met on the job site"); (Williamson Dep. at 23) (testifying that he wanted "Brookdale Hospital to look into the way they are doing business").  Local 79 also denies that Williamson stated that Local 79 had no representation on the job site, as that contention is not supported by the record.  Williamson testified to the contents of the calls, and at no point testified that he said that Local 79 had no representation. (Williamson Dep. at 14-31); (Williamson Dep. at 27) (Williamson, asked if his goal was to induce Brookdale to replace plaintiff with Local 79 contractor, responds:  "I wanted them to address the way they are doing business.  That was the purpose of my being there").  Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

230.   Local 79 admits the contention in the first sentence of paragraph 230 of the Statement, even though the record citation does not support the contention.  Local 79 also denies the contentions that Williamson based his conclusions on "the past" and "historically speaking," as they are not supported by the record.  Williamson was told that plaintiff exploited its workers by his supervisor.  (Williamson Dep. at 21-22).  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

231.   Local 79 denies the contentions in paragraph 231 of the Statement, as they are not supported by the record cited.  In the testimony relied upon by plaintiff, plaintiff's counsel repeatedly asks Williamson whether he was trying to get plaintiff replaced on the job, to which Williamson responds:  "I wanted Brookdale Hospital to look into the way they are doing business by hiring credible contractors who treat their workers with dignity and respect."

(Williamson Dep. at 28); (Williamson Dep. at 23) (testifying that he wanted "Brookdale Hospital to look into the way they are doing business").  The contentions are also contradicted by other record evidence.  (Williamson Dep. at 17) (testifying that the purpose of the call was "to ensure that working standards are met on the job site"); (Williamson Dep. at 27) (Williamson asked if his goal was to replace plaintiff with Local 79 contractor and responds:  "I wanted them to address the way they are doing business.  That was the purpose of my being there").  Finally, Local 79 also denies that the contentions are material as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

232.   Local 79 admits the contentions in paragraph 232 of the Statement, but denies that they are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

233.   Local 79 denies the contentions in paragraph 233 of the Statement, as they are unsupported by the record cited and contradicted by other record testimony.  At no point did Local 79 engage in a picket line at Brookdale hospital, or engage in any other union conduct other than inflating a rat and leafletting.  (Duggan Dep. at 45-46) (stating that he did not see or hear of Local 79 engaging in any activity other than inflating the rat and leafletting); (Fast Dep. at 30) (testifying that he did not see the protestors using a bullhorn or holding picket signs); (Connolly Dep. at 31-32) (denying seeing Local 79 engage in any conduct other than handing out leaflets, and specifically did not see "chanting, walking, [or] doing anything like that"); (Edwards Dep. at 50) (testifying, when asked if Local 79 engaged in picketing, "No, not that I know of"); (Williamson Dep. at 79-80) (testifying that the union activity that he organized were not picket lines); (Weigel Dep. at 37, 48) (testifying that he never saw a picket sign at Brookdale).

234.   Local 79 admits the contentions in paragraph 234 of the Statement that Toney emailed Connolly and others and wrote that he thought the dispute between Local 79 and BD was resolved that he understood the dispute was between two unions.  Local 79 admits that Connolly wrote to Fast that plaintiff had to rescue the situation now.  To the extent that these contentions are offered to prove the truth of the matter asserted, Local 79 denies the contentions as unsupported by the record and object to the contentions as inadmissible hearsay.  The contention that the dispute was "one union against another" is also contradicted by other record testimony.  (Williamson Dep. at 26) (testifying that union actions at hospital were designed to inform the public); (Rynkiewycz Dep. at 36).  Finally, Local 79 denies that the contentions are material as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

235.   Local 79 admits the contention in paragraph 235 of the Statement that Fast understood the dispute to be between Local 79 and Local 621, but Local 79 denies the contentions as contradicted by other record evidence.  (Williamson Dep. at 26) (testifying that union actions at hospital were designed to inform the public); (Rynkiewycz Dep. at 36).  Local 79 also denies that plaintiff's contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

236.   Local 79 admits the contentions in paragraph 236 of the Statement that Connolly emailed Deliteris to ask whether the rat would still be up and that he was concerned about having the rat at the hospital.  Local 79 denies that plaintiff's contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

237.   Local 79 admits to the contentions in paragraph 237 of the Statement, but denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

238.   Local 79 admits the contention in paragraph 238 of the Statement that Brubaker sent Brookdale representatives an email regarding union activity at Brookdale hospital.  Local 79 denies the contention that the email was sent "on behalf of Connolly" as unsupported by the record cited by plaintiff.  To the extent that the email is offered to prove the truth of the matters asserted therein, Local 79 denies the contentions contained in the Brubaker email as unsupported by the record and objects to the contentions, as inadmissible hearsay. Local 79 denies the contention that Fast understood that Local 79 wanted all of the "laborers" work, as unsupported by the record and objects to the contention as inadmissible hearsay.  (Fast Dep. at 111-12) (testifying to never speaking with anyone from Local 79 and that his understanding is based on what others told him).  Fast's understanding is also contradicted by other record evidence.  (Williamson Dep. at 26) (testifying that union actions at hospital were designed to inform the public); (Rynkiewycz Dep. at 36).  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

239.   Local 79 admits the contentions in paragraph 239 of the Statement, but denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

240.   Local 79 admits the contentions in paragraph 240 of the Statement.

241.   Local 79 denies the contentions in paragraph 241 of the Statement as unsupported by the record cited.  Fast testifies that plaintiff used Local 621 workers to perform

the laborers' work at Brookdale.  Local 79 denies that the contentions are material, as they are

not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

242.   Local 79 admits the contention in paragraph 242 of the Statement that

plaintiff entered into a contract with AMG to perform demolition work.  Local 79 denies the

contention that the contract was entered into to appease Local 79, as that contention is

contradicted by record testimony.  BD issued AMG a contract to perform demolition work

before Local 79 first put up the rat at Brookdale.  (Deliteris Dep. at 25-26; Weigel Dep. at 134-

35).  BD issued AMG a contract because Brookdale had instructed BD to use a woman-owned

business to the extent possible, and AMG is a woman-owned business and submitted a

competitive bid.  (Flavoni Dep. at 77; Capozza Dep. at 34-35; Deliteris Dep. at 35-36).

243.   Local 79 admits the contention in paragraph 243 of the Statement.

244.   Local 79 admits the contention in paragraph 244 of the Statement that

Connolly sent an email to BD on May 13, 2014 advising that the rat was back that date.  Local

79 admits the contentions in the second sentence of paragraph 244 of the Statement regarding

the contents of Connolly's testimony.  However, Local 79 denies that the purpose of the rat was

to "coerce" Brookdale into hiring Local 79 laborers, as that contention is contradicted by the

record.  (Williamson Dep. at 26) (testifying that union actions at hospital were designed to

inform the public); (Rynkiewycz Dep. at 36).  Finally, Local 79 denies that the contentions are

material, as they are not relevant to whether BD suffered damages as a proximate result of

proscribed conduct.

245.   Local 79 denies the contentions in paragraph 245 of the Statement as

unsupported by the record and objects to the contentions as inadmissible hearsay.  In the

testimony relied upon by plaintiff, Connolly could only testify to what he "heard" from other

sources.  Local 79 also denies that it engaged in union activity to attempt to get Local 79

laborers hired at Brookdale, as that contention is contradicted by record testimony.  (Williamson

Dep. at 26) (testifying that union actions at hospital were designed to inform the public);

(Rynkiewycz Dep. at 36).  Local 79 denies that the contentions are material, as they are not

relevant to whether BD suffered damages as a proximate result of proscribed conduct.

246.    Local 79 admits the contention in paragraph 246 of the Statement that

Flavoni and Labate spoke by phone on May 13, 2014 at approximately 10:25 a.m.  Local 79

denies the contention that "Labate repeatedly intimated that he had spoken to Connolly," as

unsupported by the record cited.  In the conversation cited, Labate alludes to speaking to

Connolly only once.  Local 79 also denies the contention that Labate spoke to Connolly as

contradicted by the record evidence.  (Labate Dep. at 78, 99, 111, 155, 157, 269); Connolly

Dep. at 20-21).  Local 79 otherwise admits the contentions in paragraph 246 regarding the

contents of the conversation.  Finally, Local 79 denies that the contentions are material, as they

are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

247.    Local 79 admits the contention in paragraph 247 of the Statement that

Connolly wrote an email to Flavoni dated May 13, 2014.  To the extent that the content of the

email is offered to prove the truth of the matter contained therein, Local 79 denies the

contentions as unsupported by the record and objects to the contentions as inadmissible hearsay.

Local 79 denies the contentions as to Fast's understanding, as they are not supported by the

record cited.  In the testimony relied upon by plaintiff, when asked, Fast stated:  "I do not know

what they were asking for exactly, so it would not be right to answer that."  (Fast Dep. at 44).

Local 79 also denies the contention regarding Fast's understanding as unsupported by the record

and objects to the contention as inadmissible hearsay.  (Fast 111-12) (testifying that he never

spoke with anyone from Local 79 and that his understanding is based on what others told him).

Finally, Local 79 denies that the contentions are material, as they are not relevant to whether

BD suffered damages as a proximate result of proscribed conduct.

248.   Local 79 admits the contention in paragraph 248 of the Statement that

Flavoni responded to an email from Connolly dated May 13, 2014.  To the extent that they are

offered to prove the truth of the matter asserted, Local denies the contentions contained

Flavoni's email as unsupported by the record and objects to the contentions as inadmissible

hearsay.  Local 79 also denies that paragraph 248 accurately represents the contents of that

email.  Flavoni wrote that Labate "clearly stated what he is looking for," but did not specify

what Labate wanted.  In addition, Connolly testified to understanding that meant "all of the

general conditions" but admitted "I don't know what that means."  (Connolly Dep. at 68-69).

Moreover, that contention is contradicted by record evidence.  (Williamson Dep. at 26);

(Rynkiewycz Dep. at 36).  Finally, Local 79 denies that the contentions are material, as they are

not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

249.   Local 79 admits the contentions in paragraph 249 of the Statement that

Connolly emailed Flavoni at the request of Toney to find out what Local 79 wanted in order to

end the union activity at the hospital.  Local 79 denies the rest of the contentions in paragraph

249 of the Statement, as those contentions are not supported by the record cited by plaintiff.  In

the record cited by plaintiff, Connolly does not testify to the rat and flyers becoming difficult

for the hospital, for the reason why he wrote "this is becoming problematic," or that the union

activity "had to go away."  Finally, Local 79 denies that the contentions are material, as they are

not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

250.   Local 79 admits the contention in paragraph 250 of the Statement.

67

251.   Local 79 admits the contention in paragraph 251 of the Statement that Flavoni and Labate met on May 14 at approximately 1:00 p.m.  Local 79 denies the contentions that the Union engaged in protest activity in order to get representation on the job or to pressure plaintiff to sign a union contract, as this contention is contradicted by other record evidence. (Williamson Dep. at 26); (Rynkiewycz Dep. at 36) (explaining he organized protest by Local 79 at Brookdale because he concluded the workers were being exploited); (Transcript of call dated May 15, 2014) (Labate explains that Local 79's dispute with plaintiff was not representational in nature but because plaintiff was not paying the area standard rate and plaintiff did not have a state-certified apprenticeship program, and had nothing to do with whether or not plaintiff was union or non-union).  Local 79 otherwise admits the contentions in paragraph 251 but denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

252.   Local 79 admits that the contentions in paragraph 252 of the Statement that Labate spoke to Flavoni by phone on May 15, 2014.  Local 79 denies any contention that Local 79 engaged in picketing, as contradicted by the record evidence showing that no picketing occurred.  (Duggan Dep. at 45-46; Fast Dep. at 30; Connolly Dep. at 31-32; Edwards Dep. at 50; Williamson Dep. at 79-80; Weigel Dep. at 37, 48).  Local 79 otherwise admits the contentions, but deny that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

253.   Local 79 admits the contention in paragraph 253 of the Statement that Flavoni emailed Connolly dated May 15, 2014, to inform him that BD and the Union could not come to terms.  To the extent that the contents of the emails are offered to prove the truth of the matter asserted, Local 79 denies the contentions as unsupported by the record and objects to the

contentions as inadmissible hearsay.  Local 79 admits that Connolly understood that Local 79 wanted its men on the job and would otherwise continue its union activity.  Local 79 denies the contention that its union activity was designed to get its men on the Brookdale job, as that contention is contradicted by record testimony.  (Williamson Dep. at 26; Rynkiewycz Dep. at 36).  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

254.    Local 79 admits the contention in paragraph 254 of the Statement that Connolly sent an email dated May 20, 2014 stating if the National Labor Relations Board did not make a decision by noon, Connolly would "step in" and "end this," and Connolly testified that if he had to "step in" he would have instructed BD to hire four or five laborers represented by Local 79.  Local 79 denies the contention that Local 79 "demanded" laborers, as that contention is not supported by the record cited.  Local 79 also denies the contention that Connolly could not afford to hire laborers, as the record cited does not support that contention and that contention is contradicted by other record evidence.  Connolly testified that hiring laborers represented by Local 79 would not "break the bank" and that he could take money from somewhere else in the budget.  (Connolly Dep. at 49-50, 84).  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

255.    Local 79 admits the contention in paragraph 255 of the Statement that on May 19, 2014 Weigel visited the Hospital and took video.  Local 79 denies the contention that it engaged in picket activity at the hospital, as that contention is contradicted by record testimony. (Duggan Dep. at 45-46; Fast Dep. at 30; Connolly Dep. at 31-32; Edwards Dep. at 50; Williamson Dep. at 79-80; Weigel Dep. at 37, 48).  The video cited by plaintiff likewise does

not show picketing or six agents standing by the rat, and plaintiff's own characterization of the video is that it shows Local 79 members standing around the rat and handing out flyers. (Weigel Dep. at 34-35, 41-42).  Finally, Local 79 denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

256.    Local 79 admits the contention in paragraph 256 of the Statement that Connolly and Flavoni exchanged emails dated May 20, 2014, but denies the contention in paragraph 256 that Connolly responded to an email from Flavoni, as he responded to an email from Deliteris.  To the extent that the contents of the emails are offered to prove the truth of the matter asserted, Local 79 denies the contentions contained therein as unsupported by the record and objects to the contentions as inadmissible hearsay.  Local 79 also denies the contention that Toney was "very angry and wanted the rat to go away," as unsupported by the record and objects to those contentions as inadmissible hearsay.  Local 79 admits the contention that Connolly and Fast were under pressure to resolve the issue.  Local 79 denies that the contentions in paragraph 256 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

257.    Local 79 admits the contentions in paragraph 257 of the Statement, but denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

258.    Local 79 admits the contention in paragraph 258 of the Statement that Connolly wrote to Toney on May 20, 2014, and Toney responded, asking if the rat was on site. Local 79 denies the contention that Connolly forwarded an email from Deliteris in response to Toney's inquiry as unsupported by the record, as the emails cited by plaintiff show that the

message was forwarded before the inquiry.  Local 79 admits the contention that Connolly forwarded an email to Fast, Flavoni, and Deliteris later in the morning and remarked that he was afraid it would be a difficult day.  To the extent that the contents of these emails are offered to prove the truth of the matter asserted therein, Local 79 denies the contention as unsupported by the record and objects to the contentions as inadmissible hearsay.  Local 79 denies the contention that Toney was very angry as unsupported by the record cited.  In the testimony relied on by plaintiff, Fast testified that Toney was upset.  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

      259.   Local 79 admits the contention in paragraph 259 of the Statement that Connolly forwarded the email to start a conversation about ending the union activity at Brookdale.  Local 79 admits that Connolly testified he believed that the leaflet implied that Brookdale was not providing quality healthcare.  Local 79 denies the contention that the flyer damaged the reputation of Brookdale, as it states a legal conclusion, rather than a fact, is not supported by the record cited and is contradicted by other record evidence.  In the testimony cited, Connolly was asked if he "believe[d]" the leaflet was damaging to Brookdale's reputation, not whether the reputation was damaged.  Connolly immediately went on to testify that he could not state that the leaflet had any effect and persuaded any individuals to not use Brookdale's services.  (Connolly Dep. at 92).  Local 79 denies that the contentions in paragraph 259 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

      260.   Local 79 admits the contentions in paragraph 260 of the Statement that Connolly was unsure if the flier would persuade individuals not to use Brookdale and that he

was of the opinion that the flier could and would create anxiety among patrons of Brookdale. Local 79 denies the contention that Connolly said that Local 79's dispute with BD and Local 621 was "the last thing they need to be dealing with" as that contention is unsupported by the record cited.  Connolly testified that the flier was "the last thing that they need to be dealing with," not any dispute.  Local 79 further denies that it had a dispute with Local 621, as that contention is unsupported by the record and contradicted by other record testimony. (Williamson Dep. at 26; Rynkiewycz Dep. at 36).  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

261.   Local 79 admits the contention in paragraph 261 of the Statement that Duggan was told that the rat was in close proximity to the hospital.  To the extent that this is offered to prove the truth of the matter asserted, Local 79 denies the contention as unsupported by the record and objects to the contention as inadmissible hearsay.  Local 79 also denies that the contentions in paragraph 261 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

262.   Local 79 admits the contentions in paragraph 262 of the Statement, but denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

263.   Local 79 admits the contentions in paragraph 263 of the Statement, but denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

264.   Local 79 denies the contentions in paragraph 264 of the Statement, as unsupported by the record cited.  Williamson testified that having Brookdale sit down with a

business agent of Local 79 is "one resolution."  Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

265.   Local 79 denies the contentions in paragraph 265 of the Statement, as they are not supported by the record cited.  In the testimony relied upon by plaintiff, plaintiff's counsel asked if Williamson would still conduct union activity if plaintiff offered its workers the same wages and working conditions as a Local 79 contractor.  Williamson replied that there would still be safety issues and quality issues.  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

266.   Local 79 admits the contentions in paragraph 266 of the Statement.

267.   Local 79 admits the contentions in paragraph 267 of the Statement.

268.   Local 79 denies the contention in paragraph 268 of the Statement that Williamson said he would ask someone to acknowledge the problem and stand in solidarity, as that contention is not supported by the record.  Williamson testified that good union members know to acknowledge the situation and stand in solidarity, not that he would tell them to do so.  Local 79 otherwise admits the contentions in paragraph 268.  Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

269.   Local 79 admits the contention in paragraph 269 of the Statement that Connolly sent two emails to Flavoni and Deliteris dated May 21, 2014.  Local 79 admits that Connolly informed Flavoni and Deliteris that it was in everyone's interest to resolve the matter quickly, that a new flier had Toney's name on it, and that Toney would not look at that kindly.

To the extent that the emails are offered to prove the truth of the matters asserted therein, Local 79 denies those contentions as unsupported by the record and objects to the contentions as inadmissible hearsay.  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

270.  Local 79 admits the contention in paragraph 270 that Weigel made a note concerning starting a laborer after the demolition phase.  To the extent that the note is offered to prove the truth of the matter asserted, Local 79 but denies the contentions as unsupported by the record and objects to the contentions as inadmissible hearsay.  Local 79 also denies the contention that a laborer started after the demolition phase, as that contention is contradicted by other record testimony.  (Weigel Dep. at 140) (asked whether a laborer performed general conditions work after the demolition phase and answering "No, he did not").  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

271.  Local 79 admits the contention in paragraph 271 of the Statement that Connolly saw the flyer marked as Brookdale Dep. Ex. 2, but denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

272.  Local 79 denies the contention in paragraph 272 of the Statement that "the real problem" was that Local 79 wanted work obtained by another union, as that contention is contradicted by other record testimony.  (Rynkiewycz Dep. at 36).  Local 79 also denies the contention that Connolly was upset that the patrons of the hospital were not being told "what the real problem was."  Connolly testified that the patrons did not understand what the problem was.  Local 79 otherwise admits the contentions in paragraph 272.  Finally, Local 79 denies that

the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

273.   Local 79 denies the contentions in paragraph 273 of the Statement, as they are not supported by the record cited.  In the testimony relied upon by plaintiff, when asked why he thought Local 79 was engaging in protest activity, Connolly responded:  "This is an assumption now."  (Connolly Dep. at 38).  Local 79 denies the contention that it engaged in its protest activity to get representation on the Brookdale job, as that contention is contradicted by other record testimony.  (Rynkiewycz Dep. at 36).  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

274.   Local 79 denies the contentions in paragraph 274 of the Statement, as they are unsupported by the record cited.  In the testimony relied upon by plaintiff, Connolly states that he was in favor of adding an extra laborer without knowing the complications posed by paymasters.  (Connolly Dep. at 39-40).  Connolly also did not testify that Local 79 demanded that a laborer be put on.  Connolly testified that if Local 79's demands were to add an additional laborer, then he would be in favor of doing so.  Local 79 admits the contention that when Connolly discussed the protest activity with BD, the subject was how to make the rat go away.  Local 79 also denies that the allegations are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

275.   Local 79 admits the contentions in paragraph 275 of the Statement, but denies that those contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

276.   Local 79 denies the contention in paragraph 276 of the Statement that its activity placed pressure on Brookdale, as it states a legal conclusion rather than a fact.  Local 79 also denies the contentions in paragraph 276, as they are unsupported by the record cited by plaintiff.  In the testimony cited by plaintiff, Connolly did not testify that Local 79 placed pressure on Brookdale, and Connolly did not testify that he told Brookdale to resolve the dispute "by doing whatever needs to be done."  Finally, Local 79 denies that the contentions in paragraph 276 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

277.   Local 79 admits the contention in paragraph 277 of Statement that Connolly told Toney that Local 79's protest activity was due to a dispute with Local 621.  Local 79 denies that the dispute at Brookdale was based on a dispute with Local 621, as that contention is contradicted by record evidence.  (Rynkiewycz Dep. at 36).  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

278.   Local 79 denies the contention in paragraph 278 of the Statement that "any additional costs incurred on the projects would have to be assumed by BD" as that contention is not supported by the record cited.  In the testimony cited, Connolly stated that plaintiff would be responsible only for those additional costs not approved by Brookdale.  Local 79 also denies any contention that Brookdale Hospital would require plaintiff to bear the cost of hiring laborers represented by Local 79, as not supported by the testimony cited and as contradicted by other record testimony.  In the testimony cited, Connolly testified that "one 79 guy is not going to break the bank and that the budget included "contingency money."  (Connolly Dep. at 49-50).  Connolly also testified that he would be willing to move money from elsewhere in the budget to

pay for increased labor costs associated with using Local 79 laborers.  (Connolly Dep. at 84, 117).  Finally, Local 79 also denies that the contentions in paragraph 278 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

279.   Local 79 admits the contention in paragraph 279 of the Statement.

280.   Local 79 admits the contention in paragraph 280 of the Statement.

281.   Local 79 admits the contention in paragraph 281 of the Statement.

282.   Local 79 admits the contention in paragraph 282 of the Statement.

283.   Local 79 admits the contention in paragraph 283 of the Statement that Smith contacted Connolly on October 8, 2014.  Local 79 denies that the subject of the message was that Local 79 did not have representation at the Brookdale site, as unsupported by the record cited by plaintiff.  Smith does not testify to the contents of the call, and to the extent the email is offered to prove the truth of the matter asserted, Local 79 objects to contents of the email as inadmissible hearsay.

284.   Local 79 admits that the contentions in paragraph 284 of the Statement, but denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

285.   Local 79 admits that the contentions in paragraph 285 of the Statement but denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

286.   Local 79 denies the contentions in paragraph 286 of the Statement, but that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

287.   Local 79 admits that the contentions in paragraph 287 of the Statement that Smith and Flavoni spoke by phone on October 15, 2014.  Local 79 denies the contention that Smith spoke "grimly," as that contention is argumentative and not a fact.  Local 79 denies that the contentions in paragraph 287 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

288.   Local 79 admits that the contentions in paragraph 288 of the Statement that Smith and Flavoni spoke by phone on October 17, 2014, but denies that the contentions in paragraph 288 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

289.   Local 79 admits the contention of paragraph 289 of the Statement that Brubaker sent an email on October 21 in which she wrote certain things, but denies the contention she "told" anyone anything as unsupported by the record cited.  Local 79 also denies that the contentions in paragraph 289 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

290.   Local 79 admits the contention in paragraph 290 of the Statement that Deliteris sent Connolly an email on October 21, but to the extent that the contents of that email are offered to prove the matter asserted therein, Local 79 denies the contentions, as they are based on inadmissible hearsay.  Finally, Local 79 denies that the contentions in paragraph 290 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

291.   Local 79 admits the contention in paragraph 291 of the Statement that Connolly sent Deliteris an email on October 21, but to the extent that the contents of that email are offered to prove the matters asserted therein, Local 79 denies the contentions, as they are

based on inadmissible hearsay.  Local 79 admits that Connolly wrote "just keep pushing" in the email and that he wanted plaintiff to finish the job quickly, in part to avoid further union activity.  Local 79 denies the contention that Connolly recalls conversations about giving Local 79 work, as that contention is not supported by the record cited by plaintiff.  In the testimony cited, Connolly said:  "I don't recall having a specific conversation . . ."  To the extent that any conversations between Connolly and Flavoni or Deliteris are offered to prove the truth of the matter asserted, Local 79 denies the contention as unsupported by the record and objects to the contention as inadmissible hearsay.  Local 79 admits that Deliteris sent an email wherein he alleged that Local 79 was going to fight "tooth and nail" but, to the extent that that email is offered to prove the truth of the matter asserted therein, Local 79 denies the contention as unsupported by the record and objects to the contention as inadmissible hearsay.  Local 79 admits the contention regarding Connolly's understanding of the phrase "tooth and nail," but denies the contention that Connolly was concerned that Local 79 would picket the hospital, as that contention is unsupported by the record cited by plaintiff.  In the testimony cited, when asked whether he was concerned about Local 79 potentially picketing the job site, Connolly expressed uncertainty as to what constitutes picketing and "would assume that handing out leaflets was picketing."  He then stated:  "I'm not sure what they would do.  I don't know necessarily.  When they say tooth and nail, I would assume it would take every possible option they had in their arsenal they would use, yes.  So whatever that means."  (Connolly Dep. at 105).  Finally, Local 79 denies that the contentions in paragraph 291 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

292.   Local 79 admits the contentions of paragraph 292 of the Statement regarding Weigel visiting Brookdale on October 21, 2014 but denies the contention that Local

79 agents were engaged in picketing at any point of the dispute with plaintiff's work at Brookdale, as that contention is not supported by the record cited.  In the testimony relied upon by plaintiff, Weigel states that when he drove past the rat, he did not see any of the demonstrators holding picket signs.  The video Weigel took similarly does not show picketing. Local 79 also denies the contention of picketing as contradicted by other record evidence. (Duggan Dep. at 45-46; Fast Dep. at 30; Connolly Dep. at 31-32; Edwards Dep. at 50; Williamson Dep. at 79-80; Weigel Dep. at 37, 48).

293.   Local 79 admits that the contention in paragraph 293 of the Statement that Connolly twice stated on November 11, 2014 that Brookdale wanted work completed as soon as possible, but denies the contention he stated he wanted to complete work at the job site to end Local 79's union activity, as that contention is not supported by the record cited.  Finally, Local 79 denies that the contentions in paragraph 293 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

294.   Local 79 admits the contention in paragraph 294 of the Statement that on November 11, 2014 Connolly forwarded an email to Flavoni, Fast and Deliteris that Connolly had received from Edwards.  To the extent that the contents of those emails are offered to prove the matters asserted therein, Local 79 denies the contentions, as they are based on inadmissible hearsay.  Local 79 admits that Connolly characterized Local 79's activity as a public relations nightmare.  Finally, Local 79 denies that the contentions in paragraph 294 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

295.   Local 79 admits the contention in paragraph 295 of the Statement that on November 14, Flavoni sent Connolly an email that included a list of options for dealing with Carpenters' Union activity but denies the contention that the email included a list of options for

dealing with Local 79's union activity as unsupported by the record cited by plaintiff.  The email cited by plaintiff from Flavoni to Connolly deals exclusively with options for resolving the ongoing dispute with the Carpenters Union, and does not mention Local 79 or its union activity.  The testimony cited by plaintiff does not include any discussion of that email or the subject matter of the email.

296.    Local 79 denies the contention in paragraph 296 of the Statement that it picketed the hospital, as that contention is contradicted by record evidence.  Local 79 did not at any point engage in picketing at Brookdale.  (Duggan Dep. at 45-46; Fast Dep. at 30; Connolly Dep. at 31-32; Edwards Dep. at 50; Williamson Dep. at 79-80; Weigel Dep. at 37, 48).

297.    Local 79 admits the contention in paragraph 297 of the Statement that Smith acknowledged that Local 79 laborers doing certain work would preclude other workers from doing that particular work, but denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

298.    Local 79 admits the contention in paragraph 298 of the Statement that Smith confirmed that that is part of his job, but denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

299.    Local 79 denies the contentions in paragraph 299 of the Statement, as they are not supported by the record cited.  In the testimony relied upon by plaintiff, Smith says that he is claiming Local 79's work because AMG Environmental—a Local 79 signatory—was serving as paymaster.  Smith went on to say that if AMG was not serving as paymaster "[i]t would have been a different procedure.  Totally different."  (Smith Dep. at 195).  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

300.   Local 79 denies the contentions in paragraph 300 of the Statement as they are not supported by the record cited and as contradicted by other record evidence.  Ferazzoli admitted he never visited the Hospital while Local 79 was engaged in any activity, and thus in not competent to testify as to what Local 79 did there.  (Ferazzoli Dep. at 18).  Moreover, Local 79 denies the contention that it engaged in picketing, as that contention is contradicted by the record.  (Duggan Dep. at 45-46; Fast Dep. at 30; Connolly Dep. at 31-32; Edwards Dep. at 50; Williamson Dep. at 79-80; Weigel Dep. at 37, 48).

301.   Local 79 denies the contention in paragraph 301of the Statement that Toney was "extremely upset," as it is not supported by the record cited by plaintiff.  In the testimony relied upon by plaintiff, Edwards testified that Toney was "angry" and "pissed." Local 79 admits the contention that Toney did not want a rat in front of Brookdale hospital. Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

302.   Local 79 denies the contention in paragraph 302 of the Statement that the rat harmed Brookdale's brand and standing within the community, as it states a legal conclusion, rather than a fact, and is unsupported by the record cited.  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

303.   Local 79 admits the contention in paragraph 303 of the Statement that Fast believed that the union activity was happening because Local 79 laborers were not being used and because Local 79 wanted Brookdale to change contractors.  Local 79 denies that it conducted its union activity because Brookdale was not using union laborers and because Local 79 was trying to get Brookdale to change contractors, as that contention is contradicted by

record testimony.  (Williamson Dep. at 26; Rynkiewycz Dep. at 36).  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

304.   Local 79 denies the contention in paragraph 304 of the Statement that Fast viewed Local 79 as attempting to harass and upset Brookdale, as it states a legal conclusion, rather than a fact.  Moreover, the record cited does not support the contention that Fast viewed Local 79 as attempting to harass Brookdale.  In the testimony cited by plaintiff, Fast is asked whether he thinks the leaflet was a form of harassment and whether he thought Local 79 was trying to harass Brookdale.  It is not until counsel redefined "harass" to mean "upset" that Fast agrees with the characterization.  Local 79 also denies the contention that the contents of the flyer were not true, as it states a legal conclusion, rather than a fact and is not supported by the record cited.  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

305.   Local 79 admits the contention in paragraph 305 of the Statement that Fast was concerned that hospital unions might get the impression that Brookdale hired non-union contractors.  Local 79 denies that Fast's concerns included a work stoppage.  In the testimony relied upon by plaintiff, Fast states that he had no concerns about work stoppages.  (Fast Dep. at 66).  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

306.   Local 79 admits the contention in paragraph 306 of the Statement that Fast expected the union activity to cease if plaintiff hired Local 79 contractors, but Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

307.   Local 79 admits the contention in paragraph 307 of the Statement that Fast was concerned about the message conveyed by the rat, but denies the contention that it gave the message that Brookdale was doing something wrong, as that states a legal conclusion, rather than a fact.  Local 79 denies the contention that Fast was concerned about the rat because Brookdale has contracts with other unions, as that contention is not supported by the record cited by plaintiff.  (Fast Dep. at 65-66) (stating that Brookdale has contracts, not that his concerns were related to those contracts).  Local 79 denies that Fast's concerns included a work stoppage.  Fast testified that he had no concerns about work stoppages.  (Fast Dep. at 66).  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

308.   Local 79 admits the contention in paragraph 308 of the Statement that Fast informed Connolly when Fast saw Local 79's rat but denies the contention that Fast informed Connolly when Fast saw any picketing, as that contention is not supported by the record cited.  Local 79 also denies the contention that there was ever any picketing as contradicted by other record evidence.  (Duggan Dep. at 45-46; Fast Dep. at 30; Connolly Dep. at 31-32; Edwards Dep. at 50; Williamson Dep. at 79-80; Weigel Dep. at 37, 48).

309.   Local 79 admits the contention the contention in paragraph 309 of the Statement that Fast had concerns that union activity could cause delays at the job site.  Local 79 denies, however, that its actions delayed the project in any way.  (Fast Dep. at 104).  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

310.   Local 79 admits the contention in paragraph 310 of the Statement that Fast did not have any conversations with any member of Local 79 or its agents.  Local 79 admits the

contention that Connolly was contacted by representatives of Local 79.  Local 79 denies the contention that Local 79 communicated with Fast and other representatives of Brookdale through Flavoni and Deliteris, as the contention is not supported by the record cited.  In the testimony cited by plaintiff, Fast merely states that his understanding about what Local 79 wanted, what Local 79 was doing and what Local 79 was saying was based on what others told him.  Fast does not identify these others and does not state that Local 79 used these others to communicate with Brookdale.  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

311.  Local 79 denies the contention in paragraph 311 of the Statement as it is not supported by the record cited.  In the testimony relied upon by plaintiff, while Fast states that it "is fair to say" that Local 79 wanted its workers to perform work on the clinic project, he also stated:  "I'm not exactly sure what their motive was."  (Fast Dep. at 33-34).  Local 79 also denies the contention that the motive behind its actions was to add Local 79 workers to the project, as that contention is contradicted by record testimony.  (Williamson Dep. at 26; Rynkiewycz Dep. at 36).  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

312.  Local 79 admits the contention in paragraph 312 of the Statement, but denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

313.  Local 79 denies the contention in paragraph 313 of the Statement as unsupported by the record cited.  In the testimony relied upon by plaintiff, Edwards does not testify that the outside public relations firm was hired for the purpose of preparing a statement

to address union activity.  Edwards similarly did not testify that Brookdale "recognized it could do nothing about" the union activity.  Local 79 also denies that the contentions in paragraph 313 are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

314.   Local 79 admits the contention in paragraph 314 of the Statement that Edwards had concerns about Local 79's activity due to Brookdale's relationship with 1199, but denies that those concerns included a work stoppage or slowdown by 1199.  (Edwards Dep. at 85-86).  Local 79 also denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

315.   Local 79 admits the contention in paragraph 315 of the Statement, but denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

316.   Local 79 admits the contention in paragraph 316 of the Statement, but denies that it is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

317.   Local 79 admits the contention in paragraph 317 of the Statement that Connolly does not remember any conversation with Smith.  Local 79 denies the contention that it wanted its members to perform the work at Brookdale "to the exclusion of everyone else," as the contention is argumentative, states a legal conclusion, and is not supported by the record cited.  In the testimony cited by plaintiff, Connolly answers that he understood that Local 79 was trying to put its people on the job.  (Connolly Dep. at 143).  Local 79 also denies that contention as contradicted by record testimony.  (Williamson Dep. at 26; Rynkiewycz Dep. at

36).  Finally, Local 79 denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

318.   Local 79 denies the contention in paragraph 318 of the Statement as unsupported by the record cited.  In the testimony relied upon by plaintiff, when asked whether he understood that the rat and fliers would go away if Local 79 members were placed on the job, Connolly replied "That would be my assumption, yes."  (Connolly Dep. at 177).  Local 79 also denies the contention as contradicted by other record testimony.  (Connolly Dep. at 143) (testifying that he did not recall a conversation with Smith).  Local 79 denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

**Local 79's Threats and Conduct towards Brookdale Hospital Caused BD Harm**[15]

319.   Local 79 admits the contention in paragraph 319 of the Statement that plaintiff discussed the actions of Local 79 with Brookdale representatives.  Local 79 denies the contention that Local 79 made "threats" as that contention states a legal conclusion, rather than a fact, and is contradicted by record testimony.  (Labate Dep. at 123, 159, 288) (denying threatening Flavoni in connection with the Brookdale job); (Smith Dep. at 257) (denying ever threatening Flavoni); (Smith Dep. at 257) (denying ever threatening Flavoni).  Local 79 also denies that this contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

320.   Local 79 denies the contention in paragraph 320 of the Statement that Fast was ever contacted by Local 79.  (Fast Dep. at 110-111).  Local 79 admits that Connolly forwarded a single voicemail from Labate to BD and that Connolly and Smith spoke a single

---

[15] Local 79 objects to the content of this heading, as the contention that Local 79 "caused BD harm" is an unsupported legal conclusion, rather than a fact.

time on October 8, 2014, but otherwise denies that Connolly ever communicated with Local 79.
(Labate Dep. at 78, 99, 111, 155, 157, 269; Connolly Dep. at 20-21).  Local 79 also denies that
this contention is material, as it is not relevant to whether BD suffered damages as a proximate
result of proscribed conduct.

   321. Local 79 denies the contention in paragraph 321 of the Statement that
Connolly wanted to be informed of everything Local 79 told BD as contradicted by record
testimony.  (Connolly Dep. at 21-22) (testifying to forwarding a voicemail from Labate to BD
and saying "Look, you've got to take care of this, or something" and that he was only involved
in "larger issues").  Local 79 denies that the communications were "threats," as that states a
legal conclusion, rather than a fact and is contradicted by record testimony.  (Labate Dep. at
123, 159, 288) (denying threatening Flavoni in connection with the Brookdale job); (Smith Dep.
at 257) (denying ever threatening Flavoni).  Local 79 denies that the contentions in paragraph
321 are material, as they are not relevant to whether BD suffered damages as a proximate result
of proscribed conduct.

   322. Local 79 denies the contention in paragraph 322 of the Statement that it
issued "threats" directed at Brookdale, as that contention states a legal conclusion, rather than a
fact, and is contradicted by other record testimony.  (Labate Dep. at 123, 159, 288) (denying
threatening Flavoni in connection with the Brookdale job); (Smith Dep. at 257) (denying ever
threatening Flavoni).  Local 79 also denies that Flavoni always informed Local 79 that he would
relay communications to Brookdale, as that contention is contradicted by record testimony.
(Labate Declaration ¶ 5) (denying that Flavoni ever said he would relay Labate's comments to
Brookdale).  Local 79 also denies that this contention is material, as it is not relevant to whether
BD suffered damages as a proximate result of proscribed conduct.

323.   Local 79 admits the contentions in paragraph 323 of the Statement but denies any contention that BD incurred any of the additional costs referenced in the paragraph. (Fast Dep. at 36).  Local 79 denies that this contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

324.   Local 79 denies the contentions in paragraph 324 of the Statement as those contentions state a legal conclusion, rather than a fact, and are unsupported by the record cited. In the testimony cited, Williamson does not testify that the Union "pressured" Brookdale, that Local 79 made "demands" and although Williamson testifies to his understanding of a resolution between BD and Local 79, he also states, regarding that resolution "I can't say exactly what took place . . . I don't know exactly.  All I knew is that they came to a resolution . . ."  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

325.   Local 79 denies the contention in paragraph 325 of the Statement that plaintiff incurred damages as a result of Local 79's conduct, as it states a legal conclusion, rather than a fact, is unsupported by the record cited by plaintiff, and is contradicted by other record testimony.  Local 79 denies the contention that plaintiff was not considered for one other project at Brookdale, as the contention is not supported by the record.  According to the record relied upon by plaintiff, Brookdale has only issued one RFP since the clinic job, and plaintiff was invited to submit a bid.  Plaintiff was "on the higher end of the bid" (Fast Dep. at 96) and Brookdale went with the lowest bidder.  (Connolly Dep. at 123).  Local 79 denies that the potential for union activity is a factor that will be considered by Brookdale as contradicted by record other evidence.  (Connolly Dep. at 28, 82) (testifying that he would "absolutely" consider plaintiff for other projects and has "absolutely" no concerns about Local 79's protest

activity).  (Connolly Dep. at 124) (testifying that Brookdale's only concern about using BD on future projects is whether BD is capable of performing the work and is competitive, and that Connolly has not been directed, and has not directed anyone, not to use BD on future jobs because of the clinic experience).

**Local 79 Does Not Have a Contract With Any of the Secondary Neutral Employers**

326.   Local 79 denies the contention in paragraph 326 of the Statement, as unsupported by the record cited.  In the testimony cited by plaintiff, Lee answered:  "I have no idea" when asked if Local 79 has a contract with Bank of America.  (Lee Dep. at 84).  Local 79 denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

327.   Local 79 denies the contention in paragraph 327 of the Statement, as unsupported by the record cited.  In the testimony cited by plaintiff, Lee answered:  "I don't know who that is" when asked if Local 79 has a contract with CBRE.  (Lee Dep. at 85).  Local 79 also denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

328.   Local 79 admits the contention in paragraph 328 of the Statement, but denies that it is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

329.   Local 79 denies the contention in paragraph 329 of the Statement, as unsupported by the record cited.  In the testimony cited by plaintiff, Lee answered:  "No, not that I know of" when asked if Local 79 had a contract with Brookdale.  Local 79 denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

330.   Local 79 denies the contention in paragraph 330 of the Statement, as unsupported by the record cited by plaintiff.  In the testimony cited by plaintiff, Ciuzio answered:  "I don't know, I don't believe we are" when asked if the Gap was a signatory to any union contracts.  (Ciuzio Dep. at 20).  Local 79 denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

331.   Local 79 denies the contention in paragraph 331 of the Statement, as unsupported by the record cited.  In the testimony cited by plaintiff, Lee answered:  "That's not my reign of work here.  To answer your question, no" when asked if, to his knowledge, Local 79 had a contract with King's Plaza, not Macerich.  Local 79 denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

**BD Is Highly Regarded By Its Clients**[16]

332.   Local 79 admits the contention in paragraph 332 that Wilde stated that plaintiff is an excellent contractor, but denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

333.   Local 79 admits the contention in paragraph 333 of the statement, but denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

334.   Local 79 denies the contentions in paragraph 334 of the Statement regarding Richardson's notes as unsupported by the record and objects to the contention as inadmissible hearsay, to the extent that the contents of the notes are offered to prove the truth of

---

[16] Local 79 disputes the content of this heading, as the contention that "BD is Highly Regarded by its Clients" states a legal conclusion, rather than a fact, and is not material.

the matter asserted.  Local 79 also denies that the contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

335.    Local 79 admits the contention in paragraph 335 of the Statement, but denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

336.    Local 79 denies the contention in paragraph 336 of the Statement as unsupported by the record cited.  In the testimony relied upon by plaintiff, Connolly credits BD with solving a particular construction issue but does not testify to BD "saving" the job site and getting it to completion.  Local 79 also denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

337.    Local 79 admits the contention in paragraph 337 of the Statement, but denies that the contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

338.    Local 79 denies the contention in paragraph 338 of the Statement that Ciuzio said that plaintiff is a "good contractor," as that contention is unsupported by the record cited and contradicted by other record evidence.  In the record relied upon by plaintiff, Ciuzio says that plaintiff was "not the highest quality, but . . . more than better than average . . . B+ if you will."  (Ciuzio Dep. at 147).  Ciuzio also testified that the Gap expects "A" work, that plaintiff needed improvement in cost control, and that plaintiff had trouble following Gap protocol.  (Ciuzio Dep. at 147-48, 238-39).  Local 79 also denies that plaintiff's contention is material, as it is not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

339.   Local 79 denies the contentions in paragraph 339 of the Statement, as unsupported by the record and contradicted by record testimony.  While Chang did say that plaintiff completed its work on time and was satisfactory, the record shows that Chang was not satisfied with plaintiff's performance.  Specifically, Chang was concerned about the frequency with which plaintiff submitted change orders and was concerned that plaintiff slowed work until he approved change orders, and these concerns led him to decide mid-job to not invite plaintiff to submit more bids for Mt. Sinai.  (Chang Dep. at 61, 75, 95).  Finally, Local 79 denies that these contentions are material, as they are not relevant to whether BD suffered damages as a proximate result of proscribed conduct.

Date:   November 4, 2016

Respectfully submitted,

*/s/ Joseph J. Vitale*

Joseph J. Vitale
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, New York 10036
(212) 356-0238

Tamir W. Rosenblum
Mason Tenders District Council
   of Greater New York
520 Eighth Avenue, Suite 650
New York, New York 10018
(212) 452-9407

Counsel for Defendant

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date a copy of the foregoing Response was emailed to:

> Joseph M. Labuda
> Emanual Kataev
> Milman Labuda Law Group PLLC
> 3000 Marcus Avenue, Suite 3W8
> Lake Success, New York 11042
> Counsel for Plaintiff

Dated:  November 4, 2016

/s/ Joseph Vitale
Joseph J. Vitale